**In re Gerald Edward BEYER, Debtor.**

**No. 86 B 11414 C.**

United States Bankruptcy Court,
D. Colorado.

April 21, 1987.

Paul Kram, Aurora, Colo., for debtor.

Janet MacFarlane, Denver, Colo., Standing Chapter 12 Trustee.

Steven Rider and Shelia Porter, Aurora, Colo., for Federal Land Bank of Wichita.

Ann Riordan, for First Nat. Bank of Strasburg.

## FINDINGS, CONCLUSIONS AND ORDER ON MOTION TO CONFIRM CHAPTER 12 PLAN

PATRICIA ANN CLARK, Bankruptcy Judge.

The matter before the Court is a motion to confirm debtor's plan under Chapter 12 of the Bankruptcy Code and objections to confirmation filed by the Federal Land Bank of Wichita (FLB), the Standing Chapter 12 Trustee (Trustee) and the First National Bank of Strasburg (Strasburg Bank). The FLB, the Trustee and Strasburg Bank all argue that this plan is not feasible. Additionally, the FLB disputes the values assigned to its collateral under the plan. Finally, the Strasburg Bank contends that this debtor does not qualify as a debtor entitled to relief under Chapter 12.

■ The Court will first address the value of the real property as it relates to the objection of the FLB. In order for a plan which provides for payments to the holder of a secured claim to be confirmed over the objection of that creditor, the plan must provide that the creditor retain its lien and that the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim must not be less than the allowed amount of such claim. 11 U.S.C. § 1225(a)(5)(B)(i) and (ii). Because the lien requirement is not in dispute, the main inquiry must be whether the collateral value of the FLB's interest is greater than the proposed payment under the plan.

At the time of filing of the petition, Beyer owed the FLB approximately $190,000, secured by two parcels of farmland. The first parcel, approximately 295 acres, serves as collateral for a promissory note executed by Beyer on September 16, 1982 in the original principal amount of $106,500, requiring 30 annual payments of $14,208.23. The second parcel, approximately 160 acres, serves as collateral for a promissory note signed by Beyer on August 3, 1981 in the principal amount of $98,000, requiring annual payments of $12,495.

Under Beyer's Chapter 12 plan, the 295-acre parcel is assigned a value of $12,780, capitalized at 6 percent. Beyer proposes to make regular annual payments to the FLB of $1,114.22 for 20 years, paying a total of $22,284.40 on this claim. The 160-acre parcel is assigned a value of $8,700 under the plan, with a capitalization rate of 6 percent. Similarly, Beyer proposes to make regular annual payments to the FLB of $758.51 for 20 years, paying a total of $15,170.20 on this claim. Payments on both claims begin in April, 1988.

The valuation approach used by Beyer in computing these values for the 295- and 160-acre parcels is a modified "income" approach. That is, Beyer's appraiser first computed the gross rental value of each acre, multiplied that gross rental value by 7, and adjusted the figures for crop rotation requirements to determine the per acre "market value" of the property. The appraiser then multiplied this per acre value by the number of acres to reach his conclusions as to total value.

It is Beyer's position that the computation of value for purposes of confirmation of the plan must be based on this rental value approach and that the Court must disregard any other approaches to valuation. Beyer bases this novel position on the following language in the *Congressional Record:*

> Accordingly, section 1205 of the conference report provides a separate test for adequate protection in Chapter 12 cases.

It eliminates the need of the family farmer lost opportunity costs, and adds another means for providing adequate protection for farmland—paying reasonable market rent. Section 1205 eliminates the "indubitable equivalent" language of 11 U.S.C. 361 and makes it clear that what needs to be protected is the value of the property, not the value of the creditor's "interest" in property.

Joint Explanatory Statement of the Committee of Conference, *reprinted in* 134 Cong.Rec. H8999 (daily ed. Oct. 2, 1986).

The FLB disputes this singular approach to valuation. Its appraisal is based on two separate methods, the sales comparison approach and income approach, to compute the value of these two parcels. The sales comparison approach compared attributes of five different pieces of land and adjusted prices for such variables as size, location, access and topography. Based on this examination of comparable sales, the FLB appraiser concluded that the 295–acre parcel has a value of $83,000 and the 160–acre parcel has a value of $41,000.

The second method used, the income approach, entailed capitalizing anticipated future benefits from ownership of the property into an indication of value. After estimating income from the farmland, the appraiser capitalized the income to arrive at the value, with a reference to comparable sales for the limited purpose of determining the capitalization rate. The appraiser calculated the value using the income method to be $87,500 on the 295–acre parcel and $43,500 on the 160–acre parcel.

In arriving at his final figures, the appraiser relied primarily on the comparable sales approach but included the income approach figures to verify his analysis. He concluded that the value of the 295–acre parcel is $83,000 and that the value of the 160–acre parcel is $41,000. Finally, the appraiser testified that he has never seen the value of agricultural land calculated using the method advocated by Beyer.

The issue before the Court is how to determine the value of the collateral for purposes of confirmation of a plan. Value is not defined in the Code. Section 506(a) states that a determination of value for one purpose is not necessarily determinative of value for another purpose. Thus, Section 506(a) acknowledges that there may be differing valuations for differing purposes; e.g., redemptions under Section 722 or distributive provisions of Chapter 7, adequate protection under Section 361 or confirmation under Section 1325. *See S.Rep.* No. 95–989, 95th Cong., 2d Sess. 68 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787.

The focus of inquiry in any value determination must be on the interests that a particular section of the Code is designated to protect and the valuation must be made with regard to those interests. *See 3 Collier on Bankruptcy,* ¶ 506.04 (15th ed. 1986). Generally, the interests to be considered in determining the amount of a claim for inclusion in a plan, where the continued use by the debtor of the property is obviously contemplated, is the right a creditor has to realization of the value of the property in which it has a security interest when its ability to realize that value is modified *See In re Van Nort,* 9 B.R. 218 (Bankr.E.D.Mich.1981).[1] Simply put, what the Court is concerned with here is the problem of protecting the secured creditor's interest in the collateral, including the right to foreclose and realize the cash value of the collateral.

In light of these general guidelines, Beyer's argument on value determination for the purposes of plan confirmation must now be addressed. Although Beyer referred to the legislative history regarding reasonable rent as an adequate protection alternative in supporting his approach to valuation, he failed to explain how this comment on Section 1205 pertains to a Section 1225 valuation. He merely used this legislative history as an "assumption" in his appraisal. After reviewing this assumption, the Court is unable to find any

---

1. Although the court, in *In re Van Nort,* discusses valuation under 11 U.S.C. § 1325(a)(5)(B)(ii), the legislative history of Chapter 12 makes it quite clear that Chapter 12 is modeled after Chapter 13. 132 Cong.Rec.S. 15076 (daily ed. October 3, 1986) (statement of Sen. Grassley).

plausible basis in law or in logic for Beyer's position. Merely because the legislature introduced a rental concept in adequate protection analysis does not require the Court to conclude that rental value now must be considered, and is, in fact, the only consideration, in every value determination in Chapter 12. A determination of value for adequate protection purposes is not binding on any further determinations of value.[2] Accordingly, the Court will now consider the evidence presented on the value the FLB would realize on this property and make its determination based on that evidence.

In evaluating the evidence presented, the Court is unable to find the values of $12,780 and $8,700 calculated by Beyer based on "reasonable rents and earnings capacity" to be reliable or persuasive evidence on the present value of the collateral. In addition to the fact that the computations are based on gross rents rather than gross income, a "multiplier" of 7 is used for the purpose of calculating value per acre. The appraiser failed to explain specifically why that multiplier was chosen but merely stated that, "[T]he gross rents multiple used, 'seven', is a customary accepted practice for investments of this type. It is a fair and equitable method of projecting the market value of said property." Given the number of variables that may go into determining a multiplier of this nature, the Court is unwilling to accept the multiplier factor without any evidence having been offered to support it. Therefore, the Court rejects the appraisal presented by Beyer.

To the contrary, the Court finds the appraisal used by the FLB to be quite credible and adequately supported. The final value conclusions of the FLB are supported by a sufficient number of comparable sales in the area and are further buttressed by an income analysis. Based on the findings, the Court concludes that, for the purposes of confirmation, the value of the 295–acre parcel is $83,000 and the value of the 160–acre parcel is $41,000.

Because Beyer has failed to provide for the full value of the collateral of the FLB, the requirements of Section 1225(a)(5) have not been satisfied. Consequently, the plan cannot be confirmed.

It is ORDERED that the debtor's motion to confirm his Chapter 12 plan is denied. The debtor is granted leave to file an amended plan or a motion to convert or dismiss this case within 20 days from the date of this Order, failing which the case shall be dismissed forthwith.

FURTHER ORDERED that the parties shall have 10 days from the date this Order becomes final to file a written request for the withdrawal of all exhibits received in evidence, after which time the exhibits will be destroyed by the Clerk without further order of the Court.

---

**2.** Further, a myriad of issues concerning deprivation of a property right would arise if the Court concluded that what a secured creditor would receive in a Chapter 12 plan is inextricably tied to the rental value of that land.