**In re HOCHMUTH FARMS, INC. t/a George J. Hochmuth Farms t/a Hochmuth Farms, Debtor.**

**Bankruptcy No. 87–5–0029.**

United States Bankruptcy Court, D. Maryland.

Oct. 13, 1987.

As Amended Nov. 3, 1987.

Victor H. Laws, Salisbury, Md., for debtor.

## MEMORANDUM OPINION DENYING CONFIRMATION OF DEBTOR'S PLAN AND GRANTING LEAVE TO AMEND

JAMES F. SCHNEIDER, Bankruptcy Judge.

Upon hearing on confirmation of the debtor's Chapter 12 Plan and objections thereto, the Court denies confirmation with leave to amend.

### FINDINGS OF FACT

1. On January 7, 1987, the debtor, a truck farming business operating in Wicomico County, Maryland, filed a Chapter 12 bankruptcy petition in this Court.

2. Pursuant to 11 U.S.C. § 1221, the debtor filed its Plan [P. 8] on April 6, 1987. In Exhibit One, the debtor listed minimum and maximum projections for its 1987 net operating profits and disposable income.

3. Debtor also filed a supplementary Disclosure Statement [P. 9] on April 6, 1987, admitting that the claims of Federal Land Bank ("FLB"), Marva Production Credit Association ("Marva") and the Farmers Home Administration, United States Department of Agriculture ("FHA") are secured by real property valued at $200,000.00 and equipment, machinery, and vehicles valued at $136,710.00.

4. FLB and Marva filed an objection to confirmation and motion to dismiss [P. 15], arguing that the Plan contravenes statutory requirements of Chapter 12, fails to

establish the debtor's ability to reorganize and evidences bad faith.

5. FHA filed a similar objection [P. 17], alleging that the plan fails to comply with applicable provisions of the Bankruptcy Code, is not feasible and is proposed in bad faith.

6. By Amendments [P. 18] dated May 13, 1987, the debtor attempted to cure deficiencies in its Plan. The amendments divided Class 2 secured creditors into two subclasses, set an outside date for payment on allowed priority claims, designated a new rate of interest on Class 2A claims, pledged debentures for any unsecured portion of Class 2B claims [1] and delayed debtor's discharge until consummation of the plan.

7. The debtor filed an amended and restated Plan [P. 25] incorporating the prior amendments and amending Exhibit One to reflect 1987 net operating profit in a maximum amount of $114,700 and minimum amount of $41,200. Pursuant to this amended exhibit, minimum projections would produce a deficit after payments on secured and priority claims, while maximum projections left only $25,218 in disposable income after payments on claims.

8. In addition, the amended and restated Plan terminated interest due on all Class 2 secured claims; substituted the interest due on FLB's fixed asset lien with a yearly rental payment of $5,100 [2]; reduced FLB's total secured claim from $160,000 to $100,000; reduced Marva's total secured claim from $56,000 to $6,000; reduced FHA's total secured claim from $273,000 to $229,000; conveyed a first lien on the debtor's 1986 horseradish crop proceeds to the Estate of George J. Hochmuth, deceased, ("Decedent's Estate"), pursuant to MD. COM.LAW CODE ANN. § 9–312(2) (1975 & 1986 Cumm.Supp.); subordinated the crop liens of FHA and Marva to the lien of the Decedent's Estate; converted the financing statements of FHA and Marva to junior liens on future crops and extinguished all remaining crop liens; waived all pre-petition defaults on Class 2 claims; converted Marva's lien on net cash collateral to an unsecured claim and preserved same for any future acquired collateral; proposed to pay $15,571.15 by March 31, 1988 in total satisfaction of Marva's claim; proposed outside payment dates on secured claims (payment to FLB on or before December 31, 1987, payment to FHA not later than December 31, 1987, payment to FHA not later than May 31, 1989 and payment to Marva on or before March 31, 1988); and fixed a 10% interest rate on principal of Class 2 claims remaining after consummation of the Plan.

9. FLB and Marva renewed their objection and motion to dismiss [P. 26], adding that Exhibit Two of the Plan admitted unauthorized use of cash collateral in violation of 11 U.S.C. § 363 (1987).

10. On June 30, 1987, the Court held a hearing on confirmation of the Plan and entertained the objections of FLB, Marva and FHA as well as the motion to dismiss.

11. Evidence at trial revealed that maximum projections for 1987 net operating profit and disposable income are unrealistic and more closely approximate minimum projections; that debtor has failed to pay income taxes for the last three years, that the debtor paid proceeds from the 1986 horseradish crop to the Decedent's Estate and that debtor's counsel, Victor H. Laws, Esq., is counsel to and personal representative of the Decedent's Estate, to which the Plan accords status as a secured creditor.

## CONCLUSIONS OF LAW

■ 1. Under Chapter 12 of the United States Bankruptcy Code, a plan may be confirmed which modifies the rights of secured creditors and waives pre-petition defaults on secured claims. 11 U.S.C.

---

1. The debtor filed a correction [P. 19] of this particular provision four days later. The correction stated that the unsecured portion of all Class 2 claims would be converted into debentures.

2. Debtor calculated the reasonable rental value of the collateral securing FLB's claim in an apparent attempt to satisfy 11 U.S.C. § 1205(b)(3); *see* Plan ¶ 6.1 at 8. Under the Plan, the Court had to calculate a reasonable rental payment for each subsequent plan year.

§§ 1222(b)(2) and (b)(3) (1987); *cf.* §§ 1322(b)(2) and (b)(3).[3]

2. The Court may confirm such a plan over the objections of secured creditors if its provisions meet the requirements of 11 U.S.C. §§ 1225(a)(5)(B) or (a)(5)(C). *See In re Beyer,* 72 B.R. 525, 526 (Bankr.D.Colo. 1987); *In re Janssen Charolais Ranch, Inc.,* 73 B.R. 125, 127 (Bankr.D.Mont.1987); *See generally* 11 U.S.C. § 1225(a) (necessary requisites of Chapter 12 plan).

3. Thus, the Court may force secured creditors with impaired claims to accept a Chapter 12 plan proposing either (a) return of the rejecting secured creditor's collateral, or (b) preservation of the secured creditor's lien and "property" equalling the allowed amount of the creditor's claim as valued on the effective date of the plan.

4. As a general rule, to the extent that a secured claim could be satisfied from collateral, accounting for the claims of senior lienholders, it is an allowed secured claim. 11 U.S.C. § 506(a); *see In re Rogers,* 57 B.R. 170, 172 (Bankr.E.D.Tenn. 1986); *In re Chapman,* 51 B.R. 663, 666 (Bankr.D.D.C.1985). Interest continues to accrue on such claims if the debtor is solvent and promulgates a plan offering deferred payments to the lienholder. *Littleton v. Kincaid,* 179 F.2d 848, 853 (4th Cir.1950); *see In re Mothershed,* 62 B.R. 113, 114 (Bankr.E.D.Ark.1986).

5. Section 1225(a)(5)(B)(ii) indicates that a plan is confirmable over the objections of secured claimants if proposed deferred payments will compensate the objectors for the resulting loss of use of their collateral and its present value. *See In re*

*Hugee,* 54 B.R. 676, 678 (Bankr.D.S.C. 1985), quoting *In re Klein,* 10 B.R. 657, 661 (Bankr.E.D.N.Y.1981).

6. In making such a determination, relevant factors include (a) the amounts of proposed payments; (b) anticipated payment dates; (c) the effective date of the plan; and (d) the appropriate interest or "discount rate"[4] for deferred and unpaid debts under the plan. See 5 *Collier on Bankruptcy* ¶ 1129.03 (15th ed. 1987).

7. What constitutes an appropriate discount rate, however, is not an easy question. No set formula will always determine whether deferred payments are equivalent to the present value of an allowed secured claim. For an example of the factors to consider, *see id.* ¶ 1129.03 n. 45 (current market rate as determined by prime lending rate, federal funds reserve and average rate of interest on commercial paper, certificates of deposit and United States treasury bills); *See also In re Monnier Brothers,* 755 F.2d 1336, 1339 (8th Cir.1985) (discount rate must account for inherent risks of long-term loan, quality of collateral and present money values). For purposes of confirmation, it is sufficient that the discount rate reflects the collateral's interest-earning capacity. *See In re Janssen Charolais Ranch, Inc., supra* at 127–28.

8. In this case, the debtor proposes a Chapter 12 plan which drastically alters the rights of secured creditors without satisfying the requirements of § 1225(a)(5). The Plan replaces valid senior liens[5] with junior liens and unsecured debentures in contravention of § 1225(a)(5)(B)(i). *See In re Rott,* 73 B.R. 366, 375 (Bankr.D.N.D. 1987).

3. Chapter 13 closely parallels the new Chapter 12 and provides some guidelines for interpreting its requirements. *See* H.R. 5316, 99th Cong.2d Sess., 132 Cong.Rec.H. 8999 (1986).

4. The term "discount rate" appears to be a misnomer in that the percentage factor actually increases future payments to preserve the present value of an allowed secured claim. *Cf. In re Janssen Charolais Ranch, Inc., supra,* 73 B.R. at 127 ("discount rate is used to compute a factor that reduces money that will be paid in the future …").

5. When the debtor conveyed a superior lien on collateral to the Hochmuth claim under MD. COM.LAW CODE ANN. § 9–312(2), it did not inform other secured claimants. A clear conflict of interest is presented by debtor's counsel's dual representation of the Hochmuth estate and his role as personal representative. The senior lien of the Decedent's Estate is subject to avoidance as an insider transaction. *See* 11 U.S.C. § 547(b)(4)(B) (1987).

9. Moreover, the Plan's termination of interest payments, improper reduction of the allowed amount of secured claims, assignment of an arbitrary 10% rate on unpaid principal and failure to specify exact future payment dates violates the clear import of § 1225(a)(5)(B)(ii).

10. By the debtor's own calculations, the collateral securing the claims of FLB, Marva and FHA is presently worth $336,710. Therefore, proposed future payments must equal this amount when discounted to present value. The failure of future payments to approach the $336,710 figure demonstrates the inadequacy of the proposed Plan.

11. Additionally, the debtor's principal admitted that farming operations never yield the maximum net operating profits projected. Given the sizeable amount of secured debt, the failure to account for living expenses in calculating future disposable income and the failure to provide for potential tax claims, the debtor has not demonstrated that the Plan is feasible. *See* 11 U.S.C. § 1225(a)(6) (1987).

12. As a matter of law, the Plan is not confirmable. The debtor intends to utilize the collateral of secured claimants who have not accepted the Plan, but has failed to propose a repayment schedule fulfilling the requirements of § 1225(a)(5)(B). As this determination disposes of the matter on its merits, the Court declines to rule on the other objections.

In light of the foregoing, confirmation of the Plan is hereby DENIED WITH LEAVE TO AMEND. An Order of even date is annexed which implements the terms of this Opinion.