**In re WELDIN–LYNN, INC.,**
**Debtor-in-Possession.**

**Bankruptcy No. JO 87–203 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

Oct. 26, 1987.

**410**

Warren Dupwe, Jonesboro, Ark., for debtor.

Keith Blackmon, Jonesboro, Ark., for Centerre Bank of Kennett, Mo.

## MEMORANDUM OPINION

MARY DAVIES SCOTT, Bankruptcy Judge.

On June 4, 1987, Weldin-Lynn, Inc. (debtor) filed a voluntary petition for relief under the provisions of Chapter 12 of the Bankruptcy Code. The debtor filed a proposed plan of reorganization on September 1, 1987. Centerre Bank of Kennett, Missouri (bank) and the United States of Amer-ica, Small Business Administration (SBA) filed timely objections to confirmation. On October 5, 1987, a confirmation hearing was held.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment in this case.

■ In order to confirm a Chapter 12 plan of reorganization, the requirements outlined under 11 U.S.C. § 1225 must be met. 11 U.S.C. § 1225(a)(1) provides that the plan must comply with all the provisions of Chapter 12 and all of the applicable provisions of Title 11. The Court has a separate mandatory duty to determine whether the plan has met all the requirements necessary for confirmation. This is the case in Chapter 11 and Chapter 13 and there is no reason why that should not be the rule in Chapter 12 as well. *In re Chinichian*, 784 F.2d 1440 (CA 9, 1986) and *In re Ronnie H. and Dixie G. Reddell*, HE 87–12M, unpublished op., J. Mixon (August 31, 1987).

Centerre Bank objects to the debtors' Chapter 12 plan contending it was filed in bad faith. The bank also objects to the debtors' valuations placed upon the real and personal collateral securing its claim as being below market value.

SBA also objects to the debtors' valuation of the real property securing its debt asserting that they are not receiving the present equivalent value of their secured claim at a market rate of interest. SBA also objects to the debtors' proposed 30 year pay-out as unreasonable and unfair restructuring of the parties' original agreement.

Appraisal testimony was presented in support of the real and personal property valuations by all the parties.

■ The first objection raised by the bank can be disposed of quickly. The Court does not find that the debtors filed either their petition or their plan in bad faith. 11 U.S.C. § 1225(a)(3) requires that a Chapter 12 be proposed in good faith and not by any means forbidden by law. No really relevant evidence was presented by

the bank to support this allegation other than bare pleading assertions that the petition was filed after this creditor instituted a foreclosure proceeding and the debtors alleged under valuation of the bank's security. It is not unusual for bankruptcy petitions to be filed on the eve of foreclosure. If that fact, taken alone, could support a finding of a bad faith filing, very few cases would survive. The issue of the valuations as support for this finding will also not suffice as will be apparent from the Court's following findings.

The Court is not unmindful that circuit court opinions including the Eighth Circuit have enunciated lists of non-exclusive factors which courts should consider when determining whether a plan is proposed in good faith. *In re Estus*, 695 F.2d 311 (CA 8, 1982). Although these opinions have concerned themselves with the standard for non-Chapter 12 cases, they are relevant because the drafters of new Chapter 12 modeled it primarily after Chapter 13 with some provisions from Chapter 11. H.R. Rep. No. 99–958, 99th Cong., 2d Sess. 48 (1986), U.S.Code Cong. & Admin.News 1981, p. 5227.

Since the bank did not spend much time developing this issue, the Court will also not expend much time and concludes from the evidence presented that the debtors did not file their petition or plan in bad faith. As indicated above, the filing of a bankruptcy petition after a foreclosure action has been filed is almost the rule rather than an exception which would in and of itself constitute a showing of bad faith. Rather, it is generally the filing of a foreclosure action by a creditor that signifies the final breakdown in any workout negotiations and the Bankruptcy Court is the only arena left in which to attempt reinstatement of negotiations. Likewise, valuations of security in a proposed plan are subjective. What is a gross undervaluation in the opinion of one side may not be so to the other. In any event, the valuation testimony presented even by the bank's appraisers would not support a conclusion by this Court that the plan had been proposed in bad faith. Thus, the Court rejects this assertion by the bank.

The issue of the valuations must be considered by the Court for other purposes, however. Clearly, for a plan to be confirmed under the Chapter 12 provisions of the Bankruptcy Code, certain other criteria must be met with regard to treatment of the secured claims.

11 U.S.C. § 1222(b)(2) permits the plan to modify the rights of holders of secured claims and unsecured claims. The plan may also leave the rights of any class of claims unaffected. The modification of claims, in any event, is the heart of a Chapter 12 plan. Here, two of the debtors' primary secured creditors object to the proposed plan.

The confirmation standards with respect to secured claims are found in 11 U.S.C. § 1225(a)(5) and are the same as those in Chapter 13. 11 U.S.C. § 1325(a)(5). The plan may provide any treatment for a secured claim which the holder of the secured claim accepts. 11 U.S.C. § 1225(a)(5)(A). In the instant case, two of the debtors' three secured creditors raise objections to the plan. The rights of the third secured claimant are not being altered under the proposed plan and they are absent from these proceedings.

If the holder of a secured claim does not accept the treatment proposed by the plan, the plan may still be confirmed if (1) the plan provides that the holder of the secured claim retains the lien and the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of the claim is not less than the allowed amount of the claim (11 U.S.C. § 1225(a)(5)(B)), or 2) the debtor surrenders the property securing the claim to the holder of the claim (11 U.S.C. § 1225(a)(5)(C)). The confirmation standards which apply in the absence of the approval of the holder of the secured claim are designed to protect the creditor's constitutional right against an unlawful taking of property. The confirmation requirements do this by providing that the secured creditor must receive the value of the collateral.

An important part of the secured creditor's entitlement as outlined hereinabove is also the value allowed for such secured claim. Several sub-issues arise under this entitlement and are all present in the instant case, namely, retention of liens, length or term of payments and interest rates provided. These variables must be considered by the Court.

■ The first issue raised by both Centerre Bank and the SBA was the valuation assigned to the various types of collateral securing the debts owed to these creditors. Code § 1225(a)(5) contains the confirmation requirement designed to protect the value of the secured creditor's collateral. Proper valuation, then, is central to resolution of any dispute over this issue. 11 U.S.C. § 506(a) states that the value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the property. Since the debtors in this case propose to retain the subject collateral for use in the farming operation the property should be valued at the market price, not the liquidation value because the property is not being sold at public sale. *In re Citrowske,* 72 B.R. 613 (Bkrptcy.D. Minn.1987).

■ Valuation testimony was presented by multiple appraisers testifying for all parties. The Court makes the following findings with regard to those appraisal values it believes most closely approximate the market value standard outlined above.

a) Residence of the debtors and surrounding 4.6 acres—$60,000.

The Court bases this finding on the comparable sales testimony as well as the debtor's testimony regarding the original construction price and his opinion of the value. The plan proposal valuation of $40,000.00 was simply unsupported by the evidence.

b) Farmland—two tracts located across the road from each other totaling 89 acres located in Clay County, Arkansas—$1,130.00/acre.

The Court bases this finding on the comparable sale testimony presented by the expert witnesses in addition to the testimony regarding the cash flow value of the land per acre or $1,132.00 an acre. The plan proposal valuation of $600.00 an acre was, as the testimony revealed, a liquidation or distress sale valuation and, even at that, a low figure.

c) Farm Equipment including, a metal storage building, and grain bins and all support equipment associated therewith— $112,400.00.

■ The Court bases this finding not only on the appraisal testimony presented but also on the testimony and cash offer to immediately purchase only the farm equipment by Joe Beck, Jr., a farm equipment auctioneer, buyer and appraiser from Sikeston, Missouri. The Court, in arriving at a market value to be placed on collateral cannot ignore a cash offer. This figure is also a median value between the high appraisal of $133,584.00 and the low appraisal of $85,540.00.

■ Two other issues under the confirmation requirement that secured creditors are entitled to receive the value of their collateral include the term of the proposed payout and the interest, if any, that is to be paid. The SBA raises these last two issues and the Court agrees that the debtors' proposed plan does not comply with the Code requirements for confirmation. The debtors propose to extend payments to the SBA for an additional 30 years at 5% interest. The Court finds, after reviewing the debtors' plan that treatment of this one secured creditor reveals an unfair discrimination. Repayment terms, including interest rates (10% for all other secured creditors) are far and away more advantageous to the other secured creditors. Secured creditors must be paid the present market value of the allowed secured claims which includes a market rate not only of the term of repayment but also interest or the return on the creditor's investment. *In re Robinson Ranch, Inc.,* 75 B.R. 606 (Bkrptcy.D.Mont. 1987). See, also, in this regard *In re Edwardson,* 74 B.R. 831 (Bkrptcy.D.N.D. 1987); *In re Hardzog,* 74 B.R. 701 (Bkrptcy.W.D.Okla.1987); *In re Lenz,* 74 B.R. 413 (Bkrptcy.C.D.Ill.1987); and *In re*

*Janssen Charolais Ranch, Inc.,* 73 B.R. 125 (Bkrptcy.D.Mont.1987).

The only testimony introduced by either side relevant to the issue of the interest rate was elicited by the government on cross examination of an officer of Centerre Bank. Neither side introduced relevant evidence on the issue of the term for repayment. The government contends it is an unreasonable restructuring of the original bargain between SBA and the debtor. The Court concludes that not only the interest rate provided this creditor but also the extension of the original contract is so out of proportion to those more favorable terms provided to all other secured creditors that the plan cannot be confirmed pursuant to 11 U.S.C. § 1225(a)(1) which requires that the plan comply with the provisions of this chapter. The debtors have failed to comply with 11 U.S.C. § 1222(a)(3).

Lastly, the SBA raises an objection based upon the fact that the debtors do not provide for retention of liens post-confirmation. Although that provision is not recited in the paragraphs dealing with treatment of the specific secured claims, the debtors do provide under Article VII of their plan that upon confirmation the property of the estate shall be vested with the debtor "subject to all valid liens of secured creditors as set forth in the Plan." That statement satisfies the confirmation requirement.

The Chapter 12 plan cannot be confirmed for the reasons outlined above. The debtors have twenty (20) days to file a modified plan or motion to convert to Chapter 7, or the case will be dismissed.

IT IS SO ORDERED.