**In re Gerald BUTLER, Debtor.**

**Bankruptcy No. HE 88–54M.**

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

Nov. 4, 1988.

Gerald Coleman, West Memphis, Ark., for Farm Credit Bank of St. Louis.

Charles W. Baker, Little Rock, Ark., for debtor.

A.L. Tenney, Little Rock, Ark., trustee.

John D. Bridgforth, Forrest City, Ark., for First Nat. Bank of Eastern Arkansas.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On March 25, 1988, Gerald A. Butler filed a voluntary petition for relief under the provisions of chapter 12 of the United States Bankruptcy Code. The debtor-in-possession filed a proposed plan of reorganization on June 20, 1988. On July 6, 1988,

a hearing was held concerning objections to confirmation filed by First National Bank of Eastern Arkansas (First National) and Farm Credit Bank of St. Louis (Farm Credit) (also referred to as the Federal Land Bank of St. Louis).

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The Court has jurisdiction to enter a final judgment in the case.

I

## FIRST NATIONAL AND FARM CREDIT CLAIMS

On the day the petition for relief was filed, First National was the holder of a claim for the sum of $38,109.72, plus interest at the rate of $8.61 per day from December 17, 1987, pursuant to a foreclosure decree filed January 21, 1988, in the Chancery Court of Monroe County and St. Francis County, Arkansas (Debtor's Exhibit 2). According to the decree, First National held a valid first lien on a 25–acre tract in Monroe County, Arkansas, and valid second liens on a 69–acre tract of land in Monroe County and a 40–acre tract in St. Francis County, Arkansas. In addition, First National held a valid first lien on all of debtor-in-possession's farm equipment.

On the date the petition was filed, Farm Credit held, under the terms of the foreclosure decree, a claim in the amount of $35,957.94, plus interest at the rate of $12.8389 per day from December 17, 1987. The decree provided that Farm Credit's claim was secured by a first lien on the 69–acre tract of land in Monroe County and the 40–acre tract in St. Francis County.

The proposed plan treats the claims of First National and Farm Credit as follows:

4.03 *The First National Bank of Eastern Arkansas. Class III.* FNBEA will have a secured claim in the principal sum of $43,395.17 plus interest at 11% per annum from March 25, 1988 and will be secured by a first mortgage lien on 25 acres in Monroe County as more particularly described in Exhibit A and a first lien on the farm equipment described in Exhibit B. FNBEA's secured claim will be paid in 20 equal annual installments of principal and interest in the amount of $5,449.38 with the first such annual payment to be due and owing on March 25, 1989.

Debtor may pre-pay FNBEA's claim at any time without penalty. FNBEA shall not have an unsecured claim. FNBEA shall not have a lien on any of Debtor's property except the land described in Exhibit A and the farm equipment described in Exhibit B and FNBEA will execute, upon delivery to it by Debtor, releases of each and every mortgage, deed of trust and/or security agreement of any kind in any other property of Debtor.

At any time after the first payment is made to FNBEA, Debtor may sell any of the farm equipment listed in Exhibit B free and clear of the lien of FNBEA upon payment to FNBEA of eighty percent (80%) of the amount received by Debtor from the sale of said equipment. At any time Debtor may use any of the equipment listed in Exhibit B as a down payment on the purchase of other new or used farming equipment, in which event Debtor will either pay to FNBEA eighty percent (80%) of the trade-in value or give FNBEA a lien in the newly purchased equipment which shall be secondary only to any purchase money security interest given as a part of the transaction of purchasing farming equipment. Any sums paid by Debtor to FNBEA as a result of the sale or trade-in of farming equipment shall be credited against the next annual payment due to FNBEA under this Plan. FNBEA shall not have a lien on any equipment purchased by Debtor to replace the equipment listed in Exhibit B or any other equipment of Debtor purchased hereafter unless Debtor gives FNBEA a security interest in the equipment by a subsequent security agreement in writing which creates a security interest pursuant to the Uniform Commercial Code.

4.04 *The Federal Land Bank of St. Louis.* Class IV Land Bank will have secured claim in the principal sum of $39,078.99 plus interest at 11% per an-

num from March 25, 1988 and will be secured by a first mortgage lien on 69 acres in Monroe County described in Exhibit C and 40 acres in St. Francis County described in Exhibit D and Debtor's stock in Land Bank. Land Bank's secured claim will be paid in 20 equal annual installments of principal and interest in the amount of $4,907.37 with the first such annual payment to be due and owing on March 25, 1989.

Debtor may pre-pay Land Bank's claim at any time without penalty. Land Bank shall not have a lien on any of Debtor's property except the lands described in Exhibit C and D and Debtor's stock in Land Bank and Land Bank will execute upon delivery to it by Debtor releases of each and every mortgage, deed of trust and/or security agreement of any kind in any other property of Debtor.

## II

### RETENTION OF LIENS

█ The plan allows First National to retain its first liens on the 25 acres in Monroe County and on the debtor-in-possession's farm equipment, but requires First National to release its other liens upon demand by the debtor-in-possession.[1] This provision is not permitted by the Bankruptcy Code and cannot be sustained. 11 U.S.C. § 1225(a) provides that a chapter 12 plan cannot be confirmed unless:

(5) with respect to each allowed secured claim provided for by the plan—

. . . .

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; . . .

Unless the debtor surrenders the collateral to the secured creditor or the creditor elects to accept less, a plan must provide that a secured creditor retain its lien. *See In re Citrowske,* 72 B.R. 613, 616 (Bankr. D.Minn.1987); 5 *Collier on Bankruptcy* ¶ 1225.02 (15th ed. 1988).

The plan also provides that any of First National's farm equipment collateral may be sold, with 80% of the sale proceeds remitted to First National and 20% retained by the debtor-in-possession. As an alternative, the plan permits the debtor-in-possession to use First National's farm equipment collateral as a downpayment on new equipment, with First National's being paid 80% of the trade-in value or being granted a second lien on the new equipment behind the purchase money lien. These provisions also violate the requirement of 11 U.S.C. § 1225(a)(5)(B)(i) and may not be imposed on a secured creditor without the creditor's consent.

█ The plan also provides that First National will not be granted a lien on any farm equipment subsequently acquired by the debtor-in-possession, even though such a lien may be authorized by virtue of an after-acquired property clause permitted under Ark.Code Ann. § 4–9–204 (1987). First National's objection to this plan provision is overruled. 11 U.S.C. § 552(a), which is applicable in a chapter 12 case by virtue of 11 U.S.C. § 103(a), specifically excludes liens on after-acquired property which becomes property of the estate after the case is commenced. *See In re Wallman,* 71 B.R. 125, 127–28 (Bankr.D.S.D. 1987); 3 *Collier on Bankruptcy* ¶ 552.01 (15th ed. 1988).

## III

### VALUATION

All parties introduced evidence regarding valuation of the various properties securing the claims of First National and Farm Credit. The plan treats both claims as fully secured. First National's claim is partially secured by a first lien on the 25–acre tract in Monroe County which the debtor-in-possession valued in his plan at $13,750.00. First National introduced an appraisal which valued the tract at $16,000.00. First National's claim is also secured by a first lien on all of the debtor-in-

---

1. At the confirmation hearing, counsel announced, and the debtor-in-possession conceded, that First National would be allowed to retain its second liens on the other tracts of land. Record at 4, 11.

possession's farm equipment which the debtor-in-possession valued in his plan at $29,645.17. The debtor-in-possession testified at the hearing that the equipment was worth $36,350.00. First National introduced an appraisal of the equipment which fixed the value at $20,082.00. First National's claim is also secured by a second lien on the 69–acre tract in Monroe County and the 40–acre tract in St. Francis County. The debtor-in-possession valued the tracts together in the sum of $39,078.99. First National introduced an appraisal of the 69–acre tract[2] which valued the property at $35,500.00. Farm Credit, which holds a first lien on the 69–acre tract and the 40–acre tract, introduced an appraisal of the two tracts in the sum of $48,200.00. The debtor did not introduce any appraisal testimony except as to the farm equipment. Based on the testimony, the values are fixed as follows:

| | |
|---|---|
| 25–acre tract | $16,000.00 |
| 109–acre tract | 48,200.00 |
| Farm equipment | 20,082.00 |

Based on these valuations, the claims of First National and Farm Credit are oversecured; however, the equity cushion is reduced by the daily accrual of interest on both claims and by depreciation of the farm equipment securing part of First National's claim. According to First National's appraiser, most of the debtor-in-possession's farm equipment is old and should be depreciated over five years.

## IV

### PAYMENT OF CLAIMS

The plan proposes to pay First National's claim in twenty annual installments of $5,449.38 with interest at the rate of 11% per annum. The plan proposes to pay Farm Credit's claim in twenty annual installments of $4,907.37 with interest at the rate of 11%. First National objects to the 20–year repayment term because it alleges it is not a long-term lender. Both Farm Credit and First National allege that the plan does not give them the present value of their collateral, that the interest rate is too low, and that their secured positions are not adequately protected.

The court's comments in the case of *In re O'Farrell*, 74 B.R. 421 (Bankr.N.D.Fla. 1987), are applicable here. In *O'Farrell* the court stated:

F.L.B. contends that the proposed annual payments extending for a period of thirty years is contrary to the provisions of its original note and mortgage. Section 1222 of the Bankruptcy Code specifically authorizes deferred payments: "... the plan ... may provide for payment of allowed secured claims consistent with Section 1225(a)(5) of this title ... over a period *exceeding* the period permitted under section 1222(c)." (i.e., 3–5 years). (emphasis supplied). (See, § 1222(b)(9)). Section 1225(a)(5) states in pertinent part that "the court shall confirm a plan if— (5) with respect to each allowed secured claim provided for by the plan— ... (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim...." The Code permits deferred payments over extended periods regardless of the prior financial arrangements between the parties and subsequent acceleration of the obligation due, so long as the contingencies of § 1225(a)(5)(B)(i) and (ii) are satisfied; i.e. ... the mathematical requirements are met, the creditor is adequately protected under the plan, and the debtors can prove they can make payments over the life of the plan.

*Id.* at 423–24. *See also In re Big Hook Land & Cattle Co.*, 81 B.R. 1001, 1006 (Bankr.D.Mont.1988); *In re Martin*, 78 B.R. 598, 602 (Bankr.D.Mont.1987); *In re Janssen Charolais Ranch, Inc.*, 83 B.R. 743, 745 (Bankr.D.Mont.1987) (20 year term held to be reflective of open market); *In re Bullington*, 80 B.R. 590, 596 (Bankr.M.D. Ga.1987), *aff'd sub nom., Travelers Ins. Co. v. Bullington*, 89 B.R. 1010 (M.D.Ga.

---

**2.** The appraiser identified the tract as containing eighty acres.

1988) (30 year repayment term was reasonable).

■ Because of the depreciable nature of the farm equipment partially securing First National's claim, First National would not remain fully secured while payments under the restructured payment terms proposed by the plan would be made. Even though the plan proposes a stream of payments which would pay First National's claim in full, including appropriate interest at the highest rate currently allowed under Arkansas law, the plan's payment length as to First National's claim is impermissibly long and does not satisfy the requirements of 11 U.S.C. § 1225(a)(5)(B)(i) and (ii).

Farm Credit, on the other hand, would remain fully secured during the term of payments under the plan. Farm Credit's claim is fully secured by real property[3] and Farm Credit should be adequately protected if appropriate interest is included.

■ For a creditor to receive the present value of its claim under 11 U.S.C. § 1225(a)(5)(B)(ii), the interest thereon must be comparable to the current market rate for a loan under similar circumstances. *See In re Batchelor*, 97 B.R. 993 (Bankr.E.D.Ark.1988), and cases cited therein. Farm Credit argues that, because it is not subject to Arkansas' usury laws, it is entitled to a 12½% rate of interest, the rate it normally charges to distressed or delinquent borrowers such as the debtor-in-possession. However, the appropriate rate of interest should be determined by the characteristics of the debtor and the loan, rather than the characteristics of the creditor. *In re Snider Farms, Inc.*, 83 B.R. 977, 994–95 (Bankr.N.D.Ind.1988); *In re Janssen Charolais Ranch, Inc.*, 83 B.R. at 744–45. The rate the debtor-in-possession should pay is the rate he would have to pay to a commercial lender for a similar loan in the prevailing market. *See e.g., In re Foster*, 79 B.R. 906, 911–12 (Bankr.D.Mont.1987). A bank officer for First National testified that the current rate it would charge to a borrower on a 20–year land loan would range from "prime to prime plus two," depending on the type of loan, the collateral, and the borrower's credit history at the bank. The officer testified that the current prime rate is 8½%; therefore, the rate of interest proposed in the plan *exceeds* the current market rate, provides extra protection to Farm Credit, and is reasonable.

## V

## OTHER PLAN PROVISIONS

In addition to addressing objections by creditors, the Court has an independent duty to determine whether the plan has met the requirements necessary for confirmation as set forth in the Bankruptcy Code. *In re Weldin–Lynn, Inc.*, 79 B.R. 409, 410 (Bankr.E.D.Ark.1987). 11 U.S.C. § 1222(b) lists various provisions that a chapter 12 plan may include. In addition to specifically allowed provisions, 11 U.S.C. § 1222(b)(11) permits a plan to include "any other appropriate provision not inconsistent with this title." This plan contains several provisions which are inconsistent with the Bankruptcy Code.

Paragraph 2.03 of the plan provides in part as follows:

Notwithstanding anything contained above, the Debtor reserves the right to surrender, abandon, or (at the lienors' option) execute deeds in lieu of foreclosure as to any item of property after the Confirmation Date to any creditor holding a valid lien against such collateral and receive full and complete satisfaction of any Claims secured by the liens on said abandoned property (which will have a result of a deed in lieu of foreclosure between said lien holders and the Debtor, and which will be deemed to satisfy in full all Claims which are secured by said property).... The confirmation ot this Plan shall discharge all of the personal liabilities of the Debtor (except for those obligations which are created or reaffirmed under this Plan) and

---

**3.** Although the plan states that Farm Credit's claim is also secured by the debtor-in-possession's stock in The Federal Land Bank of St. Louis, no testimony was presented as to the stock's value.

shall reduce all secured claims to "in rem" obligations for which the Debtor will have no further personal liability of the Confirmation Date of this Plan.

■ The effect of confirmation of a chapter 12 plan is different from the effect of confirmation of a plan under chapter 11. In chapter 11, except as provided in the order of confirmation, confirmation acts as a discharge of the debtor's liability for his dischargeable preconfirmation debts. 11 U.S.C. § 1141(d)(1). In a chapter 12 case, a discharge occurs only after completion by the debtor of all payments under the plan. 11 U.S.C. § 1228(a). Therefore, a plan which grants a chapter 12 debtor a discharge upon confirmation is not confirmable. Also, granting a partial discharge of all debts by rendering a creditor's claim *in rem* upon confirmation is inconsistent with the discharge provisions of chapter 12 unless a creditor agrees to such treatment.

■ Additionally, no provision of the Bankruptcy Code authorizes the debtor to elect at any time during the life of the plan to surrender the collateral to the secured creditor in full satisfaction of the creditor's claim, regardless of the value, unless the creditor agrees to this treatment. This provision prevents the secured creditor from receiving the present value of its secured claim as required by 11 U.S.C. § 1225(a)(5)(B)(ii), particularly in view of the type of collateral securing First National's claim. At a minimum, such a provision must require a hearing and a determination of value at the time of the proposed surrender.

■ Paragraph 7.08 of the plan provides as follows:

7.08 *Extensions.* Upon *ex parte* application for good cause, the Court may (and reserves jurisdiction to) grant moratorium(s) and extension(s) of the payments to creditors in any Class as set forth in the Plan for any reasonable period of time due to circumstances presently unforeseeable and for acts of God which preclude payments to creditors under the Plan. This Plan is not intended to be aborted, or this case dismissed or converted to Chapter 7, if payments are not timely made under this Plan and if moratorium(s) or extension(s) can and/or should be granted by this Court for reasonable cause(s).

This provision is not authorized by the Bankruptcy Code and is unfair. A debtor-in-possession is allowed to modify his plan after confirmation under 11 U.S.C. § 1229; however, under basic principles of due process, a creditor is certainly entitled to a hearing on an application to defer or extend payments. *See* 11 U.S.C. § 1229(b)(2).

## VI

### FEASIBILITY

Both Farm Credit and First National have questioned the feasibility of the debtor-in-possession's plan. If the plan is modified in accordance with this opinion, the Court will consider the issue of feasibility in that context.

## VII

### CONCLUSION

The debtor-in-possession's plan cannot be confirmed for the reasons stated herein and must be modified accordingly. The debtor-in-possession must file a modified plan within thirty days of the entry of this order or the case will be dismissed upon notice and a hearing.

IT IS SO ORDERED.