In re Leon K. GRIMM and Ruth Ann Grimm, Debtors.

Bankruptcy No. 88–40001–PKE.

United States Bankruptcy Court, D. South Dakota, S.D.

Oct. 2, 1992.

Wanda Howey–Fox, Harmelink & Fox Law Office, Yankton, S.D., for debtors.

Rick A. Yarnall, Sioux Falls, S.D., Chapter 12 Bankruptcy Trustee.

Curt R. Ewinger, Rice & Ewinger, Aberdeen, S.D., for FDIC.

G. Mark Rice, Des Moines, Iowa, for FDIC.

## CASE SUMMARY

PEDER K. ECKER, Bankruptcy Judge.

The matter before the Court is an objection to a Notice of Filing Final Account and Report and Debtor's Final Exit Report and objections to entry of an order granting discharge of this Chapter 12 bankruptcy proceeding. After a hearing, the Court took the matter under advisement. Factually presented, the issue is whether the Court may override objections to discharge when Debtors have successfully completed all but one plan payment, due to the fact that the one payment "shortfall" is argued to be the result of the Federal Deposit Insurance Corporation's [hereinafter FDIC's] "poor sales procedures" used to sell Debtors' chattels after obtaining relief from the automatic stay. The simple, legal issue is whether a debtor's substantial, yet incomplete payment performance as required by a confirmed Chapter 12 plan of reorganization is sufficient to satisfy the discharge requirements of 11 U.S.C. § 1228(a).

Debtors seek a Chapter 12 discharge when plan payments are incomplete. The argument is based on the fact that the collateral was surrendered after FDIC ob-

tained relief from the automatic stay. This, Debtors contend, is "full satisfaction" of the FDIC's claim regardless of the value placed on the collateral under the confirmed plan and regardless of the amount of proceeds obtained at sale. *In re Butler*, 97 B.R. 508, 514 (Bankr.E.D.Ark.1988). Discharge is not yet available in this case, however, because the plain meaning of "completion by the debtor of all payments under the plan" has not been met, and the Court cannot conjure up something that is not provided for by the Bankruptcy Code. 11 U.S.C. § 1228(a).

The Court concludes that, except for the underlying dispute between the parties as to the commercial reasonableness of the sale of collateral, the amount sought to be discharged in this matter is nondischargeable. Section 1228(a) of the Bankruptcy Code permits a "full-compliance" discharge "after completion by the debtor of all payments under the plan." This requirement has not yet been met. Debtors may obtain a discharge without making all payments under the plan only by complying with 11 U.S.C. § 1228(b).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Objections to Discharge

Debtors' counsel, Yankton, South Dakota, attorney, Wanda Howey–Fox, filed Debtors' Final Account and Report asserting that all requirements of Debtors' confirmed Chapter 12 plan of reorganization have been met. The Notice of Filing Final Account and Report and Debtors' Final Exit Report states all payments have been completed under the plan, other than payments to holders of allowed claims provided for under 11 U.S.C. § 1222(b) or 11 U.S.C. § 1222(b)(10). Having accomplished these requirements, Debtors contend their bankruptcy proceeding is in proper posture for discharge. The notice allowed thirty days for any party to file an objection to granting entry of an order of discharge.

Two objections to discharge were timely filed. The Chapter 12 Trustee, Sioux Falls, South Dakota, attorney, Rick A. Yarnall, filed an objection to discharge raising several issues of concern, in particular, the fact that one plan payment due the Trustee for distribution to the FDIC on FDIC's personal property claim has not been paid. The FDIC filed a similar objection to discharge through Aberdeen, South Dakota, attorney, Curt R. Ewinger, and Des Moines, Iowa, attorney, G. Mark Rice. The FDIC is a creditor in this bankruptcy, secured in Debtors' machinery, equipment, and livestock [hereinafter Collateral]. The FDIC also has a secured claim in Debtors' real estate and an unsecured claim of $136,036.59.

Under the terms of Debtors' confirmed Chapter 12 plan, Debtors are to pay the FDIC fifteen equal, annual amortized payments of $13,112.35 each in satisfaction of FDIC's claim secured by the Collateral. Debtors failed to make the 1991 and 1992 payments as required, and, as a result, the Court entered an order granting relief from the automatic stay relative to the Collateral.

Just prior to obtaining relief from the automatic stay, the FDIC and Debtors entered into a stipulation giving the FDIC possession of the Collateral. Debtors' response to the objections to discharge affirmatively states that, even with this stipulation in place, the FDIC did not take possession of the livestock for approximately three months, causing Debtors the continued expense of feeding and caring for the livestock. Finally, in an effort to maximize the amount of proceeds realized from a liquidation sale, Debtors transported the livestock to market, completed a sale, and remitted $22,919.25 in sale proceeds to the FDIC.

Pursuant to obtaining relief from the automatic stay, the FDIC took possession of Debtors' machinery and equipment. Again, Debtors affirmatively respond, stating that, in order to maximize proceeds from the sale of machinery and equipment, Debtors offered to allow the FDIC to conduct the sale on Debtors' farmstead. This offer was refused, and, instead, the FDIC spent several thousands of dollars transporting the equipment to the State of Nebraska, where a sale was conducted which,

after costs, netted $31,801.39 in proceeds. Two other items of jointly owned property realized $1,650.00.

### 2. The Competing Arguments

Debtors contend that the FDIC's sale of Collateral, which was listed as a "secured creditor auction," was essentially a "fire sale." Debtors believe the equipment was not sold in a commercially reasonable manner, inasmuch as the FDIC did not attempt to maximize the sale proceeds. Debtors believe proceeds could have been maximized if the sale occurred on Debtors' farmland and in Debtors' name rather than advertising the sale as a creditor auction. Further, Debtors were not advised by the FDIC of the date scheduled for the sale but, rather, discovered this information from a locally published newspaper. Thus, any "shortfall" in the amount of sale proceeds is a direct result of FDIC's poor sales procedures, and the FDIC should suffer the consequences. Debtors also suggest that had the Nebraska equipment sale yielded an excess amount of proceeds, the FDIC would have kept the windfall. As far as Debtors are concerned, the bottom line in this case is that the FDIC "chose its remedy" by seeking and obtaining relief from the automatic stay, and, therefore, it is not entitled to any further monies from Debtors relative to the Collateral, inasmuch as Debtors no longer have the Collateral.

Notwithstanding the dispute about the commercial reasonableness of the sale of Collateral, Debtors argue they are entitled to a discharge of their unsecured and undersecured claims because 1) they have made all other plan payments "with exception of a payment to the trustee on the chattels [Collateral] in question"; 2) they have paid the 1992 real property payment to FDIC; 3) they have provided creditors with all the financial information necessary under the local rules of bankruptcy; and 4) they have complied with the FDIC's request for financial information, including a Bankruptcy Rule 2004 examination.

On the other hand, the FDIC objects to the entry of a discharge "to the extent the Debtors are seeking a discharge of the amounts remaining due and owing FDIC on its claim secured by the Collateral." The order confirming Debtors' Chapter 12 plan indicates that the value of the Collateral is $96,950.41. After applying Debtors' 1989 and 1990 annual payments of $13,112.35, and after crediting the $55,720.64 proceeds resulting from the sale of the Collateral, Debtors still owe $35,056.60 plus interest. The total "shortfall" is around $41,000.

As to the argument that the FDIC "chose its remedy," the FDIC states that there was no election of remedies. Under the circumstances, the FDIC was faced with either seeking dismissal of the case or seeking relief from the automatic stay.

## II. DISCUSSION

### 1. The Terms of the Relief Order

The language of the order granting the FDIC relief from the automatic stay contains two provisions important to this case. The first provision states that the agreement for relief

> shall not operate or be construed as a waiver of the FDIC's right to seek further relief ... in the event that the proceeds derived from the sale of the collateral are insufficient to satisfy the obligation relative to the chattel collateral or be construed as an agreement by the FDIC to discharge any debt not required to be discharged....

This provision permits the FDIC to pursue Debtors for any "shortfall" of sale proceeds and allows an objection to Debtors' request for an order of discharge. The second provision states that the agreement for relief

> shall not operate or be construed as a waiver of, or by, the debtors to any defense they have, or may have against the FDIC, or as a consent to litigation by the FDIC for any deficiency or perceived deficiency arising from the sale of the livestock, machinery and equipment relative to this Order.

This provision permits Debtors to raise any and all affirmative defenses against the FDIC concerning the amount of sale proceeds obtained, but also states that Debt-

ors are not forced into litigating the "short-fall" issue.

These two provisions were put in place by the parties and should provide the parties a mechanism to help resolve their dispute relative to the issue of whether the sale of Collateral was conducted in a commercially reasonable fashion.

2. The Requirements of Discharge Under 11 U.S.C. § 1228(a)

■ Section 1228 of the Bankruptcy Code governs the discharge of a Chapter 12 bankruptcy proceeding. There are basically two types of discharge available under Section 1228, and, in this case, Debtors seek a "full-compliance" discharge. A "full-compliance" discharge is available when the debtor has made all payments to the trustee as required under the plan. 5 L. King, *Collier on Bankruptcy* ¶ 1228.01, at 1228–3 (15th ed. 1992). A "full-compliance" discharge acts to discharge all debts provided by the plan, debts disallowed under 11 U.S.C. § 502, and administrative expenses allowed under 11 U.S.C. § 503. 11 U.S.C. § 1228(a). A "full-compliance" discharge is contingent on completing all payments under the plan:

> As soon as practical *after completion by the debtor of all payments under the plan*, other than payments to holders of allowed claims provided for under section 1222(b)(5) or 1222(b)(10) of this title, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan allowed under section 503 of this title or disallowed under section 502 of this title....

11 U.S.C. § 1228(a) (emphasis supplied). This Court relies on and seeks to enforce, where appropriate, the plain language of the Bankruptcy Code. *Patterson v. Shumate*, — U.S. —, —, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992); *Taylor v. Freeland & Kronz et al.*, — U.S. —, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Grogan v. Garner*, 498 U.S. 279, — n. 13, 111 S.Ct. 654, 660 n. 13, 112 L.Ed.2d 755 (1991), *citing K Mart Corp. v. Cartier,*

*Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The plain language of Section 1228(a) requires completion of all plan payments before being eligible for a Chapter 12 discharge.

Although no case law is found addressing the issue of whether sale proceeds received subsequent to obtaining relief from the automatic stay may override Section 1228(a)'s requirement that all plan payments be completed prior to discharge, case law reveals that courts contemplating decisions of confirmation find that plans cannot be confirmed if the "completion of payments before being eligible for discharge" requirement has been altered or rewritten by a proposed plan. For example, the following plan provision was considered unauthorized under the Bankruptcy Code and in contradiction to the requirements of 11 U.S.C. § 1228(a) because the plan provided for discharge upon "substantial satisfaction" of the plan's terms:

> Payment of all or a part of a claim of a creditor may be made from property of the estate or property of the debtor. Some or a part of the debtor's property may be sold or ... may be distributed among those creditors having an interest in such property. Such distribution, if any shall operate as a complete satisfaction of the claim secured thereby.
>
> . . . .
>
> Upon substantial satisfaction of the terms of this Plan, debtor shall be discharged as to all claims, except as otherwise provided in this Plan....

*In re Gore*, 113 B.R. 504, 508 (Bankr. E.D.Ark.1989). *See also In re Rott*, 94 B.R. 163, 166 (Bankr.D.N.D.1988).

■ This type of Chapter 12 plan confirmation scrutiny is important because of the effect of confirmation on a Chapter 12 plan. Under a Chapter 11 plan, confirmation acts as a discharge of a debtor's liabilities for dischargeable pre-confirmation debts. 11 U.S.C. § 1141(d)(1). But in a Chapter 12 case, discharge only occurs after completing all plan payments. Therefore, a Chapter 12 plan that proposes to grant a discharge upon confirmation or af-

ter "substantial" compliance with the terms of the plan, is simply not confirmable. *In re Butler*, 97 B.R. 508, 514 (Bankr. E.D.Ark.1988).

 Case law also reveals that courts, including this Court, have considered Section 1228(a) with respect to the net disposable income requirements of Section 1225(b). A debtor's failure to comply with the "affirmative" duty to make all net disposable income payments is a failure to meet the requirements for discharge and increases the likelihood of dismissal. *In re Wood*, 122 B.R. 107 (Bankr.D.Idaho 1990). *See also In re Rowley*, 143 B.R. 547 (Bankr. D.S.D.1992); *In re Kuhlman*, 118 B.R. 731 (Bankr.D.S.D.1990).

In this case, Debtors seek a Chapter 12 discharge when plan payments are incomplete. The argument is based on the fact that the Collateral was surrendered after FDIC obtained relief from the automatic stay. This, Debtors contend, is "full satisfaction" of the FDIC's claim regardless of the value placed on the Collateral under the confirmed plan and regardless of the amount of proceeds obtained at sale. *In re Butler*, 97 B.R. at 514. Discharge is not yet available in this case, however, because the plain meaning of "completion by the debtor of all payments under the plan" has not been met, and the Court cannot conjure up something that is not provided for by the Bankruptcy Code. 11 U.S.C. § 1228(a).

There are alternatives to the "full-compliance" discharge under Section 1228(a). The Bankruptcy Code also permits a second type of discharge known as a "hardship" discharge, which is available when a debtor has not completed making all payments under the plan. 11 U.S.C. § 1228(b). There are three requirements to obtaining a hardship discharge. The first requirement is to show that circumstances exist which would excuse the debtor from failing to comply with the terms of the plan. In this case, Debtors indicated in their responsive pleading that unforeseen and unavoidable health problems did exist, which may satisfy this first requirement. 11 U.S.C. § 1228(b)(1). The second requirement is that the value, as of the effective date of the plan, of all property distributed under the plan on account of each unsecured claim is not less than the amount that the holder of the claim would have received had the debtor's estate been liquidated under Chapter 7 on the effective date. 11 U.S.C. § 1228(b)(2). The final requirement for a "hardship" discharge is to show that plan modification is not practical. 11 U.S.C. § 1228(b)(3). This third requirement raises another option, which is plan modification pursuant to 11 U.S.C. § 1229.

### CONCLUSION

The Court concludes that, except for the underlying dispute between the parties as to the commercial reasonableness of the sale of Collateral, the amount sought to be discharged in this matter is nondischargeable. Section 1228(a) of the Bankruptcy Code permits a "full-compliance" discharge "after completion by the debtor of all payments under the plan." This requirement has not yet been met. Debtors may obtain a discharge without making all payments under the plan only by complying with 11 U.S.C. § 1228(b).

The Court shall enter an appropriate order.