**In re James D. FENNIG,
Margie K. Fennig.**

**Bankruptcy No. 88–00478.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Oct. 28, 1994.

---

**476**

Steven Diller, Van Wert, OH, for debtors.

Thomas Schank, Toledo, OH, for Citizens Commercial Bank & Trust Co.

Suzanne Mandross, Trustee, Toledo, OH.

**OPINION AND ORDER DENYING MOTION TO MODIFY CHAPTER 12 PLAN, TO DEEM PLAN COMPLETED AND FOR DISCHARGE AND GRANTING MOTION TO DISMISS CHAPTER 12 CASE**

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court upon James and Margie Fennig's (the "Debtors") motion to modify their chapter 12 plan (the "Plan"), to deem Plan completed and for discharge to which Citizens Commercial Bank (the "Bank") has filed an objection. The Bank has filed a motion to dismiss the Debtors' chapter 12 bankruptcy case. The Court finds that the Debtors' motion is not well taken and should be denied. The Court further finds that the Bank's motion is well taken and should be granted.

### FACTS

The parties have stipulated to the facts presented to the Court on their respective motions. *See* Joint Stipulation of Facts and Issues on Motion to Dismiss and Motion to Modify Plan filed August 8, 1994 (the "Stipulation"). The parties have also requested that the Court consider the transcripts and exhibits from the examinations of the Debtors pursuant to Fed.R.Bankr.P. 2004. *See* Stipulation at p. 4, para. 19. Additionally, the parties have requested that the Court consider "the other documents of record" in this bankruptcy case. *See* Stipulation at p. 4, para. 19.

The Debtors filed their chapter 12 case on March 7, 1988 (the "Case"). *See* Stipulation at p 1, para. 1.

On October 20, 1988, the Court conducted a hearing on confirmation of the Plan, as modified by agreement of the parties. *See* Stipulation at p. 1, para. 2. The order journalizing confirmation of the Plan was entered on August 15, 1989. *See* Stipulation at p. 1, para. 2 *and* Stipulation, Exhibit A.

The order confirming the Plan provided the following treatment of the Bank's claim:

[t]he parties agree that [the Bank] has a secured claim in real property of the [D]ebtors at $280,000.00. Such claim shall

bear interest at the rate of 10% per annum from October 20, 1988 until paid in full. Interest shall be paid from October 20, 1988 to December 15, 1988 in the amount of $4,295.89 on December 15, 1988. In addition, on December 15, 1988 the [D]ebtors shall pay $14,000.00 to be applied to principle. Thereafter the balance of $266,-000.00 shall be paid in equal annual installments of $31,244.34 of interest and principle on December 15 of each year until paid in full with the first such payment being December 15, 1989. No proof of claim will be required to be filed for this claim and the mortgages securing the same shall remain on the real property until paid in full.

All other claims of [the Bank] shall be deemed unsecured and treated in accordance with Class 7. Such claims shall be required to be filed and duly proved and allowed.

*See* Stipulation, at p. 1–2, para. 3.

The confirmed Plan provided the following treatment of unsecured claims under Class 7:

[a]ll unsecured claims arising before the filing of the petition, or b[y] virtue of treatment accorded herein or by operation of 11 USC 506 shall upon the claim being duly proved and allowed, share on a pro rata basis all the disposable income of the debtors as set forth in Exhibit 1 to the Plan and as may be determined by the Court in any year subsequent to 1988 from the report of the Debtors. Such payment shall be made on December 31, 1988 and each year thereafter for a period of five years.

The Debtors shall pay a minimum of $5,000.00 per year and shall cause to be filed monthly itemization after confirmation during said period.

*See* Stipulation, at p. 2, para. 4.

The agreement to limit the Bank's secured claim under the Plan was conditioned upon and was in consideration of the Debtors' performing all of their obligations under the Plan.

Based on the confirmed Plan, the allowed unsecured claims in the Case were as follows:

| | | |
|---|---|---|
| FmHA | $145,056.00 | 31% |
| Bank | $285,045.05 | 61% |
| Karl Wellman | $ 38,974.11 | 8% |

*See* Stipulation, pp. 2–3, para. 5.

In December, 1988, the Debtors made the first year's Plan payments. The Debtors reduced the principle balance of the Bank's secured claim to $266,000.00 as of January 1, 1989. The Debtors also paid $5,000.00 to the Trustee under the Plan. *See* Stipulation, p. 3, para. 6.

In December of 1989, the Debtors defaulted upon the Plan by failing to make the required payments. The Debtors made no attempt to modify the Plan prior to such default nor prior to the filing of the instant motion. *See* Stipulation, p. 3, para. 7.

The Bank moved for relief from stay and abandonment of certain of the Debtors' real property on February 2, 1990, as more fully set forth in Exhibit A to said motion.

On March 28, 1990, the Court granted the Bank's motion. The Court entered the following stipulated order on the Motion for Relief from Stay and Abandonment of the Bank:

parties agree that [the Bank] will be granted relief from stay. Further [the Bank] agrees to stay any further proceedings in foreclosure subject to Debtors contract for auction sale to be held no later than April 28, 1990. Said auction to sell sufficient property in satisfaction of [the Bank's] claim. [Bank] granted abandonment.

*See* Stipulation, p. 3, para. 8.

The Debtors proceeded to private sale of the real property and obtained a contract for a private sale prior to April 28, 1990. *See* Stipulation, p. 3, para. 9.

The Debtors sold the real property on June 29, 1990 (the "Real Property Sale"). *See* Stipulation, p. 3, para. 10.

The net proceeds from the Real Property Sale after taxes and expenses were $371,-499.62. *See* Stipulation, p. 3, para. 11.

The Bank's total claim against the Debtors was $595,742.39 on the date of the Real Property Sale. *See* Stipulation, pp. 3–4, para. 12.

Thereafter on September 12, 1990, the Debtors filed a report of sale with the Court. *See* Stipulation at p. 4, para. 13.

The Debtors effectively ceased all farming operations in December, 1989. *See* Stipulation, p. 3, para. 10. The Debtors have not resumed farming operations or engaged in farming since 1989. *See* Stipulation, p. 4, para. 14. In 1991, the Debtors ceased filing operating reports. *See* Stipulation, p. 4, para. 15.

On April 8, 1994, the Debtors filed the instant motion to Modify, to Deem Plan Completed and for Discharge. *See* Stipulation, p. 4, para. 16.

### DISCUSSION

### Whether the Debtors are Entitled to a Discharge Under 11 U.S.C. § 1228

■ The Bank argues that the Debtors are not entitled to a discharge under § 1228(a) because they have not completed the payments to the Bank and other creditors as required by the Plan. The Court agrees. "[I]n a Chapter 12 case, discharge only occurs after complet[ion] [of] all plan payments." *In re Grimm*, 145 B.R. 994, 997 (Bankr.D.S.D.1992). Here, as in *In re Grimm*, the Debtors are not entitled to a discharge because they have not made the payments required by the Plan. *In re Grimm*, 145 B.R. at 998 (citing 11 U.S.C. § 1228(a)).

■ Further, the facts presented to the Court do not support a finding that the Debtors are entitled to a "hardship discharge" under § 1228(b) based on "catastrophic circumstances". *C.f. In re White*, 126 B.R. 542 (Bankr.N.D.Ill.1991) (finding that the debtors' reduced income as a result of the cessation of one of the debtors' temporary disability payments did not represent "catastrophic circumstances" warranting a "hardship discharge" under § 1328(b)); *In re Schleppi*, 103 B.R. 901 (Bankr.S.D.Ohio 1989) (noting that "hardship discharge" requires "catastrophic circumstances" under § 1328(b)); *In re Dark*, 87 B.R. 497, 498 (Bankr.N.D.Ohio 1988) (stating that "[t]o warrant a grant of a hardship discharge [under § 1328(b)], unsubstantiated and conclusory statements re-

garding an inability to fund a plan are insufficient"). Moreover, this Court, as the court in *In re Nelson*, "will not find [that] modification is impracticable [in circumstances] where the Debtors waited until it was too late to modify their Plan to request a hardship discharge, even though the alleged circumstances giving rise to the hardship discharge occurred at an earlier time". *In re Nelson*, 135 B.R. 304, 308 (Bankr.N.D.Ill. 1991).

### Whether the Debtors May "Modify" the Terms of the Confirmed Plan

■ As noted by the Bank, the Debtors' attempt to modify the Plan is untimely. The Debtors have not proposed additional Plan payments. Section 1229 provides that modification of a chapter 12 plan must be made "before the completion of payments under such plan". 11 U.S.C. § 1229(a). Therefore, the Debtors' motion to modify the Plan without making additional Plan payments is untimely.

Indeed, even if the Debtors desired to modify the Plan to make additional payments at this late stage in the case, such modification would be circumscribed by § 1229(c). *C.f. In re Neill*, 158 B.R. 93, 97 (Bankr. N.D.Ohio 1993) (finding that debtor could not modify plan payments beyond parameters set for plan modification under chapter 13).

■ Furthermore, the Court shall not interpret § 1229 in a manner which would grant the Debtors a discharge absent compliance with § 1228. Although phrased as a motion to "modify" the terms of the Plan, the Debtors' motion, in substance, represents an attempt to circumvent the express statutory mandate of § 1228. Section § 1229 which permits "modification" of a plan should not be interpreted in a manner which would supersede the specific statutory language of § 1228. *See HCSC–Laundry v. United States*, 450 U.S. 1, 6, 101 S.Ct. 836, 838–39, 67 L.Ed.2d 1 (1981) (stating that "it is a basic principle of statutory construction that a specific statute ... controls over a general provision ... particularly when the two are interrelated and closely positioned"); *Bulova Watch Co. v. United States*, 365 U.S. 753,

758, 81 S.Ct. 864, 868, 6 L.Ed.2d 72 (1961) (noting that specific statute controls over more general statute) (citations omitted). Additionally, the fact that Congress provided debtors under chapter 12 with two well-defined means by which they can obtain a discharge belies an intent to provide debtors with a third means of obtaining a discharge under chapter 12. *See In re Genlime Group, L.P.,* 167 B.R. 453, 455 (Bankr.N.D.Ohio 1994) (applying the principle of expressio unius est exclusio alterius in construing 11 U.S.C. § 331) (citation omitted).

■ Lastly, even if "modification" of the Plan at this late stage in the Case was permissible under the Bankruptcy Code, the Debtors have not demonstrated an unanticipated change of circumstances warranting such modification. *See In re Cooper,* 94 B.R. 550 (Bankr.S.D.Ill.1989) (debtors' mistake in valuing assets did not represent unanticipated change in circumstances warranting plan modification under § 1229); *see also In re Pearson,* 96 B.R. 990, 993 (Bankr.D.S.D. 1989) (denying motion to modify confirmed plan brought by trustee based on the fact that certain "real estate should have been valued higher at the time of confirmation"); *c.f. In re Wickersheim,* 107 B.R. 177, 181 (Bankr.E.D.Wis.1989) (stating that "[a] plan modification is only warranted where there is an unanticipated change in circumstances affecting implementation of the confirmed plan") (citation omitted); *In re Grogg Farms, Inc.,* 91 B.R. 482, 485 (Bankr.N.D.Ind.1988) (debtor's default under terms of plan did not represent unforeseen circumstances warranting plan modification).

### Whether the Debtors have Materially Defaulted Under a Term of the Plan

■ The Court concludes that "cause" exists for dismissal of the Case pursuant to § 1208(c)(6) based on the Debtors' "material default" with respect to a term of the confirmed Plan. Most significantly, the Debtors have failed to make Plan payments since 1989. *See* Stipulation, p. 3, para. 7; *see also* Brief of Debtors in Support of Motion to Modify, to Deem Plan Completed and for Order of Discharge and in Opposition to Motion to Dismiss, p. 4, para. 3 (stating that "[t]he debtors did not make the $5,000 minimum distribution [required by the Plan] in 1989 or thereafter"). Further, the Debtors ceased all farming operations in 1989. Indeed, James Fennig indicated in an examination under Fed.R.Bankr.P. 2004 that the Debtors are presently incapable of completing Plan payments. *See* Transcript of Rule 2004 Examination of James Fennig, p. 103. The Debtors also ceased filing operating reports in 1991. Therefore, the Court finds that the Bank has born its burden of demonstrating "cause" for dismissal of the Case under § 1208(c)(6). *C.f. In re H.R.P. Auto Centers, Inc.,* 130 B.R. 247 (Bankr.N.D.Ohio 1991) (finding that debtor's failure to make payments under confirmed plan warranted dismissal of chapter 11 case under the more rigorous "cause" standard set forth in § 1112(b)(8)); *In re Micro–Acoustics Corp.,* 49 B.R. 630 (Bankr.S.D.N.Y.1985) (debtor's default under terms of plan in discontinuing payments to creditors and discontinuing business operations constituted "cause" for conversion under § 1112(b)(8)).

In light of the foregoing, it is therefore

ORDERED that the Debtors' motion to modify chapter 12 plan, to deem plan completed and for discharge be, and it hereby is, denied. It is further

ORDERED that the Bank's motion to dismiss the Debtors' chapter 12 case be, and it hereby is, granted.