Vincent W. MICHELS, Debtor.

No. 03–00316–W.

United States Bankruptcy Court, N.D. Iowa.

Sept. 19, 2003.

Thomas L. Fiegen, Cedar Rapids, IA, for Debtor.

## ORDER RE: CONFIRMATION AND MOTION TO DISMISS

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on August 26, 2003. Debtor Vincent W. Michels appeared with Attorney Thomas Fiegen. Carol Dunbar appeared as Chapter 12 Trustee. Attorney John Hofmeyer represented Maynard Savings Bank ("MSB"). Assistant U.S. Attorney Lawrence Kudej appeared on behalf of the I.R.S. After hearing evidence and arguments of counsel, the Court took the matter under advisement. The time for filing briefs has passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF THE CASE

Debtor filed a Chapter 13 petition in this Court in April 2001. Debtor's Chapter 13 petition was amended five times before a final confirmation hearing was held. The Chapter 13 case was dismissed after appeal to the 8th Circuit B.A.P. Debtor filed the present Chapter 12 case less than one month after dismissal of the prior case. Debtor filed an Amended Chapter 12 Plan of Reorganization ("Plan") on June 30, 2003. It is this Plan which is the subject of this confirmation hearing.

Two matters are before the Court: confirmation of Debtor's First Amended Plan and MSB's Motion to Dismiss. Debtor has filed an objection to the claim of Maynard Savings Bank. Valuation of the claim was deferred until after ruling on the Plan Confirmation. The issues presented include:

a) the Plan's proposed avoidance of MSB's liens on certain farm equipment;

b) feasability of Debtor's Plan;

c) the sufficiency of the interest rate to be paid MSB under the Plan; and

d) the overall good faith of the proposed plan.

## FINDINGS OF FACT

Debtor owns a 200–acre farm in Buchanan County, Iowa. Between 1996 and 2000, Debtor's farming operation lost $323,000. Debtor leased the land to relatives for the 2003 growing season, but maintains that he intends to resume farming in 2004. Debtor's gross revenue from his farming operations was $48,031 in 2002. The projected revenue under the Plan is $122,188 in 2004, and $132,880 in 2005. Debtor currently earns $1,572 per month from off-farm employment. The Plan projects this income to increase to $1,965 by 2005. Debtor owns commercial real estate in Oelwein, Iowa, which provides rental revenue of $1,550 per month.

Debtor's total outstanding debts, according to the Plan, are $365,829. The current

amount owing MSB is approximately $193,000. This debt is secured by a first mortgage and security interest in Debtor's commercial real estate, a first security interest in Debtor's farm machinery, and a second mortgage on Debtor's 200–hundred acre farm. MSB objects to the Plan's treatment of its security interest in Debtor's machinery. MSB also questions feasibility of the Plan.

The Plan proposes that MSB's lien on Debtor's machinery be avoided and the machinery sold to generate proceeds to pay unsecured creditors. Debtor concedes that he needs to use the proceeds from the sale of the machinery to pay unsecured creditors because there is a lack of unencumbered assets in the estate. Debtor asserts MSB will not be harmed by avoidance of the liens because the bank is oversecured. In exchange for having its lien avoided, MSB is given the right to demand receipt of Debtor's interest in the commercial real estate with the stipulation that Debtor be credited for $100,000 on his outstanding balance. The Plan also allows for MSB to retain its lien on the commercial real estate in the event MSB does not exercise the right to have the property transferred to it. Debtor's appraiser valued the Oelwein commercial real estate at $88,500 in June, 2003.

The Plan proposes that MSB shall receive semi-annual payments of $2,000 every October and April from October, 2003 through October, 2013. In addition, MSB is to receive $1,232.76 per month, which includes principal and interest payments. Interest is to accrue at 5.75% on the balance. The Plan proposes that on October 15, 2013, the entire balance shall become due and payable to MSB. Under this payment scheme, the balloon payment would be approximately $70,000.

## CONCLUSIONS OF LAW

■ Debtor must establish all six elements essential to confirmation under 11 U.S.C. § 1225 in order to have the Plan confirmed. *In re Szudera,* 269 B.R. 837, 842 (Bankr.D.N.D.2001). Several of these elements are contested in this case including the good faith requirement of § 1225(a)(3), the treatment of secured claims under § 1225(a)(5), and the overall feasibility of the Plan under § 1225(a)(6).

## REMOVAL OF MSB'S LIENS, § 1225(a)(5)(B)(i)

The Plan proposes to avoid the liens held by MSB on Debtor's farm machinery. For the Plan to be confirmed, § 1225(a)(5) demands that:

with respect to each secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder. . . .

11 U.S.C. § 1225(a)(5)(2003). Since MSB, a secured creditor, has objected to the Plan, § 1225(a)(5)(A) is not satisfied. The Plan proposes to sell the equipment securing MSB's interest to a third party in order to generate proceeds. The property is not being surrendered to MSB in accordance with § 1225(a)(5)(C). Debtor is faced with the task of satisfying § 1225(a)(5)(B) in order to have the Plan confirmed.

The Court need not look past the plain language of § 1225(a)(5)(B)(i) to conclude that Debtor has failed to meet the burden placed upon him. Paragraph 3.04(g) of the Plan stipulates that "[c]onfirmation of this Chapter 12 Plan will terminate [MSB's] blanket lien on Chapter 12 Debtor Michels' farm machinery, equipment, crops, livestock, contract rights, general intangibles, proceeds and all other farm related collateral." This Plan does not allow MSB to retain its lien on these pieces of collateral as security for the $193,000 debt owed to MSB as required by § 1225(a)(5)(B)(i).

Debtor asserts in his brief that § 1225(a)(5) is satisfied because the Plan allows for a partial distribution of property to MSB and that a lien transfer is a permissible action under Chapter 12. However, Debtor equates the retention of MSB's lien on the real estate under the Plan with a transfer of the lien on the machinery. Debtor's position appears to be that because MSB has a second mortgage on the 200–acre farm valued at approximately $357,000 and the first mortgage is only for $70,000, MSB is significantly oversecured and will not be damaged by the removal of its liens on the machinery. While it may be true that MSB is oversecured, without the liens on the farm machinery, MSB is in a less secure position and more vulnerable. Debtor attempts to justify the attempted lien avoidance on the farm machinery by offering MSB what it already possesses, a lien on Debtor's real estate.

Debtor relies on *In re Hanna*, 912 F.2d 945 (8th Cir.1990), and *In re Kerwin*, 996 F.2d 552 (2nd Cir.1993), in support of his position that the Plan satisfies § 1225(a)(5). Debtor misconstrues both cases. In *Hanna*, the debtor was a cattle farmer who owed a significant sum to the bank. *Hanna*, 912 F.2d at 947. The bank held a lien on the debtor's entire livestock herd as security for the loan. *Id.* The

proposed reorganization plan in *Hanna* provided that the debtor would sell a portion, but not all, of the livestock herd in order to pay creditors and obtain operating capital. *Id.* The bank was entitled to keep the existing lien on the remaining cattle, and in exchange for removing the lien on the cattle to be sold, the bank was to obtain a second mortgage on the debtor's real estate. *Id.* By its own terms the plan in *Hanna* increased the value of the bank's security interest from an amount that was 120% of the outstanding loan balance to 165% after the bank obtained the replacement lien in the real estate. *Id.* The bank objected to losing its lien on any of the cattle. *Hanna*, 912 F.2d at 948.

The *Hanna* court held that the debtor could sell the livestock, but that the bank would continue to possess a lien on the entire herd of cattle. *Id.* at 951. The court also found that the plan must adequately protect a secured creditor such as the bank. *Id.* To protect the bank in this situation the plan would have to ensure that the livestock inventory would be maintained at a minimum level and provide the bank with additional safeguards such as collateral reports, inspections, or monthly interest payments. *Id.* The *Hanna* court rejected the plan because it did not adequately protect the bank. *Id.* at 952. The court would not allow the real estate lien to replace the livestock lien even though the bank was oversecured by a greater margin with the real estate lien. *Id.* The court stated, "The [real estate] mortgage granted the bank is much less liquid and carries with it different risks than a lien on cattle, for which the bank had bargained. The debtors' plan denies the bank too much of the benefit of that bargain." *Id.*

Debtor's reliance on *Hanna* is misplaced for several reasons. First, *Hanna* only speaks to the unique situation in which the

collateral at issue is livestock. *Hanna*, 912 F.2d at 949. *Hanna* rejected a literal interpretation of § 1225(a)(B)(i) in situations involving collateralized livestock because to do so would prevent the confirmation of any plan in which the debtor's primary source of revenue was generated through the sale of livestock. *Id.* at 950. This would be so because the debtor would not be able to sell the livestock and produce operating revenue needed to maintain farming operations, pay other creditors, and provide for debtor's living expenses. *Id.* (quoting *In re Hansen*, 77 B.R. 722, 726 (Bankr.D.N.D.1987)). *Hanna* holds that a security interest in livestock provides the lender with a lien on the entire herd not any particular animal. *Hanna*, 912 F.2d at 950.

The *Hanna* court conceded and did not attempt to change the general rule that a literal interpretation of § 1225(a)(5)(i) is appropriate in circumstances not involving livestock. *Id.* at 949; *See In re Butler*, 97 B.R. 508, 511 (Bankr.E.D.Ark.1988); *In re Batchelor*, 97 B.R. 993, 995 (Bankr. E.D.Ark.1988); *In re Hochmuth Farms, Inc.*, 79 B.R. 266, 269 (Bankr.D.Md.1987); *In re Rott*, 73 B.R. 366, 374 (Bankr.D.N.D. 1987); *In re Citrowske*, 72 B.R. 613, 616 (Bankr.D.Minn.1987). "Chapter 13's lien retention provision, 11 U.S.C. § 1325(a)(5)(B)(i), which is identical to its counterpart in Chapter 12, has also been strictly construed." *Hanna*, 912 F.2d at 949 (citing *In re Hink*, 81 B.R. 489, 491 (Bankr.W.D.Ark.1987); *In re Litton*, 36 B.R. 660, 661 (Bankr.M.D.Tenn.1984)). Since the collateral at issue in this case is farm machinery and not livestock, *Hanna* is not applicable. The requirement in § 1225(a)(5)(i) that MSB retain its lien on the machinery shall be strictly construed and the lien will not be voided or transferred without the specific authorization of MSB.

Second, the *Hanna* court did not allow the debtor to replace the lender's lien in the livestock with a second mortgage on debtor's real estate. *Hanna*, 912 F.2d at 951–52. The court stated that to allow such an action would "impermissibly [alter] the balance struck [by Congress] between the rights of debtors and creditors." *Id.* at 952. The court disallowed this lien replacement even though the lender was oversecured by a greater amount with the real estate lien than the livestock lien. *Id.* Even if Debtor was attempting to offer MSB a security interest in some asset to replace the voided farm machinery lien, which he is not, such an exchange would not be permitted without MSB's consent.

■ Debtor's reliance on *Kerwin* is equally misplaced. *Kerwin* stands for the proposition that a debtor may satisfy § 1225(a)(5)(i) by transferring to the objecting lender property with a fair market value equal to, or greater than, the outstanding debt. *Kerwin*, 996 F.2d at 554. Once the debt is completely satisfied through the transfer of property any and all liens held by the lender shall then be removed. *Id.* The *Kerwin* court stated:

Upon careful analysis of the statute, we hold that because the completed transfer of property valued at or above the secured lender's claim fully satisfied that debt—regardless of whether the property transferred comprised only part and not all of the collateral—the lien requirement of § 1225(a)(5)(B)(i) must be deemed satisfied. This follows because however much protection a lien is entitled to under § 1225(a)(5), it does not continue in existence after the creditor's oversecured claim is satisfied by the transfer of property to it of equal or greater value. In short, when the claim is satisfied the lien securing it is extin-

guished too, for nothing remains for it to secure.

*Id.*

■ Debtor's position seems to be that the combination of transferring his interest in the Oelwein commercial real estate to MSB and the future payments to MSB will satisfy § 1225(a)(5)(B), and, in addition, MSB's lien on his machinery should be voided. While providing MSB with future payments equaling the present value of the outstanding debt will arguably satisfy § 1225(a)(5)(B)(ii), this does nothing to fulfill § 1225(a)(5)(B)(i). To have the equipment liens avoided under *Kerwin,* Debtor would need to transfer property with a cumulative value of at least $193,000 at the time of confirmation. Debtor is only offering to transfer the commercial real estate valued at $88,500 to MSB. The Plan needs to provide MSB with at least another $94,500 in cash or property at confirmation in order to allow Debtor to sell the farm machinery free and clear of MSB's security interest.

Therefore, in addition to impermissibly attempting to use the plan confirmation process for lien avoidance instead of by motion, Debtor has failed to satisfy the requirements of § 1225(a)(5). *Szudera,* 269 B.R. at 841. As a mandatory requirement of the confirmation process, this failure requires that confirmation be denied. However, as other significant issues are raised, the Court will also discuss the remaining objections.

**PRESENT VALUE, § 1225(a)(5)(B)(ii)**

Even though § 1225(a)(5)(B)(i) is unsatisfied due to Debtor's proposal to avoid the farm machinery lien, the Plan also fails because it does not provide MSB with the present value of the outstanding debt as required by § 1225(a)(5)(B)(ii).

■ Under Section 1225(a)(5)(B)(ii) a nonconsenting holder of an allowed secured claim must, in addition to retaining its lien, receive property having a present value not less than the allowed amount of the claim. What this means is that the [Plan], in addition to preserving [MSB's] liens, must provide it with a stream of payments which has a present value equal to the allowed amount of the claim.

*Szudera,* 269 B.R. at 843. In satisfying § 1225(a)(5)(B)(ii) the burden is on Debtor to establish that the interest rate proposed in the Plan is equitable. The Plan offers MSB 5.75% interest on the outstanding secured debt. Eighth Circuit law provides that the "most appropriate interest rate is the current market rate for similar loans made in the region at the time." *Id.* (citing *United States v. Doud,* 869 F.2d 1144 (8th Cir.1989)). In *Szudera,* the court rejected the debtor's plan that provided the creditor with 7% interest when the debtor provided no evidence to substantiate the rate proposed. *Szudera,* 269 B.R. at 843. The court found that given the debtor's credit risk the interest rate must be at least 9% to adequately protect the creditor. *Id.* at 844. Debtor has provided no evidence supporting the interest rate of 5.75%. MSB asserts that, based upon risk, a more reasonable interest rate would be 9 or 9.5%.

In *In re Noe,* 76 B.R. 675 (Bankr. N.D.Iowa 1987), this Court articulated a rule for determining the appropriate rate of interest on secured claims in bankruptcy. The rate should be comprised of a base rate, usually that of a U.S. treasury bond with the same maturity as that of the loan, plus some risk premium. *Id.* ("This risk factor, usually about 2 percent, must be added to the base rate provided by the analogous government security.")(citing *In re Doud,* 74 B.R. 865 (Bankr.S.D.Iowa 1987)).

The yield on a 20–year treasury bond was 5.48% as of September 2, 2003. Add-

ing only 2% for the risk premium yields a rate of 7.48%. This rate should be the absolute minimum rate accruing on MSB's secured claim given the risk of Debtor's default. More realistically, the proposed rate should be another one to two percent higher than the minimum. The Plan calls for a balloon payment in ten years and the possibility that Debtor will fail to make that payment appears to be even greater than the risk that he will fail to make the monthly payments as they come due. An interest rate of 9 to 9.5% is more appropriate given the level of risk assumed by MSB under this Plan. Because the Plan proposes an interest rate on MSB's secured claim below the 20–year treasury bond rate adjusted for risk, the Plan does not satisfy the requirements of § 1225(a)(5)(B)(ii). *See Noe,* at 677.

## FEASIBILITY

 Section 1225(a)(6) requires the Plan to be feasible. The Plan can be confirmed only if "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6)(2003). The Eighth Circuit's feasibility test considers whether provisions in a plan are achievable given the unique facts of the case. *In re Bowman,* 253 B.R. 233, 238–39 (8th Cir. BAP 2000). This Court will only approve a plan if it has a rational likelihood of success. *See In re Danny Thomas Prop. II Ltd. P'ship,* 241 F.3d 959, 963 (8th Cir.2001). A plan projecting a marked increase in profitability with no explanation of the cause is not confirmable. *See In re Euerle Farms, Inc.,* 861 F.2d 1089, 1091 (8th Cir.1988).

 Finding Debtor's Plan to be feasible requires several leaps of faith. Debtor projects a shift from substantial historical farm losses to instant and growing profitability under the Plan without any indication of a change in strategy.

This sudden swing is to occur as Debtor liquidates most of his farm equipment, retaining little more than a 31–year–old tractor. The Plan shows Debtor's expenses remaining flat while his off-farm wages increase by a total of 25%. Debtor projects crop revenue to more than double under the Plan. Debtor has not provided any credible evidence substantiating these overly optimistic projections.

In addition, any "plan that includes a balloon payment to a creditor is suspect of confirmation unless there is proof of circumstances likely to produce a bucket of cash at just the right time to make the payment." 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 198.1 (3d ed.2002); *In re Harris,* 199 B.R. 434, 436 (Bankr.D.N.H. 1996). Under the Plan, the debts owed to MSB and Farm Credit Services are to be paid in full on October 15, 2013 by Debtor making a balloon payment to both of these creditors. The total outstanding debt currently owed to these two creditor is approximately $272,000. If Debtor makes all payments in accordance with the Plan the total balloon payments due in 2013 will be approximately $139,000. The Plan offers no suggestion as to how Debtor will be able to make those two balloon payments without doing what he is attempting to avoid here, i.e. liquidating more unencumbered assets.

As noted above, the Plan provides MSB with interest on its outstanding claim at a rate of 5.75%. Allowing Debtor to pay $1232.76 per month to MSB plus two additional payments per year in the amount of $2000 would result in a balloon payment of approximately $70,000 in 2013. However, using an interest rate of 9.0%, which is more realistic given Debtor's credit risk, the balloon payment would be approximately $168,500. The monthly payments being offered in the Plan do not even cover the monthly interest expense using a fair

market interest rate. The fact that Debtor cannot pay MSB a reasonable amount every month to satisfy its claim strongly suggests that this Plan is not feasible.

## DEBTOR'S LACK OF GOOD FAITH

This Court must conclude that Debtor's Plan has not been proposed in good faith as required by § 1225(a)(3). MSB has not received a payment toward the outstanding debt in over four years. Debtor unsuccessfully sought relief under Chapter 13 of the bankruptcy code for almost two years before having his case dismissed.

The Plan proposes to provide MSB with very little in the way of immediate satisfaction of the debt. Instead, the Plan proposes to stretch out the loan to MSB on a 20-year amortization schedule and then seeks to satisfy the debt in a single balloon payment in 2013. This proposal suggests that Debtor is attempting to delay payment to MSB even more than he already has done, resulting in additional risk exposure for MSB. In addition, the Plan's proposal to allow MSB to acquire Debtor's interest in the Oelwein commercial real estate worth $88,500 in exchange for a $100,000 credit on the loan balance owed to MSB lacks both reason and good faith. It is difficult to conceptualize how Debtor could, in good faith, propose that an oversecured creditor such as MSB should accept anything less than complete satisfaction of its claim.

## DISMISSAL

Section 1208 of the Bankruptcy Code articulates the circumstances under which a bankruptcy court may dismiss a case. The court "may dismiss a case under this chapter for cause, including— (1) unreasonable delay ... by the debtor that is prejudicial to creditors; ... (5) denial of confirmation of a plan under section 1225 of this title and denial of a request made for additional time for filing another plan or a modification of a plan; ... and (9) continuing loss to or diminution of the estate and absence of a reasonable likelihood or rehabilitation." 11 U.S.C. § 1208(c)(2003). The list of reasons for dismissal articulated in § 1208(c) is not exclusive. *In re Barger,* 233 B.R. 80, 84–85 (8th Cir. BAP 1999); *In re Euerle Farms,* 861 F.2d 1089 (8th Cir. 1988). The decision to dismiss a case is within the sound discretion of the bankruptcy court. *In re Brown,* 82 F.3d 801, 806 (8th Cir.1996).

The fact that the Plan is not confirmable under § 1225 is by itself grounds for dismissal. 11 U.S.C. § 1208(c)(5)(2003). Also, "[f]iling for Chapter 12 protection without the ability to reorganize renders the petition subject to dismissal." *In re Weber,* 297 B.R. 567, 572 (Bankr.N.D.Iowa 2003)(citing *Euerle Farms,* 861 F.2d at 1092). Cause for dismissal exists where a Chapter 12 debtor has had ample opportunity to propose a confirmable plan but has failed to do so. *Weber,* at 572.

Due to the Plan's inadequacies, § 1225(a) is not satisfied. Debtor has been seeking bankruptcy relief under both Chapter 13 and Chapter 12 since April, 2001. In total, Debtor has submitted eight plans of which none have been confirmed. To allow this case to remain open would invite "unreasonable delay" and "diminution of the estate" in the "absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1208(c)(2003).

## CONCLUSION

Debtor has no basis in law for avoiding MSB's liens on the farm machinery as proposed under paragraph 3.02(d) of the Plan. Without MSB's acceptance of the

Plan or complete satisfaction of MSB's claim, Debtor has failed to satisfy 11 U.S.C. § 1225(a)(5). The Plan is not feasible, because it relies on increasing revenue and flat expenses with little or no evidence to support these projections. The Plan calls for a large balloon payment to two creditors in 2013, but does not suggest how Debtor will obtain the funds for these payments.

MSB has not received a payment from Debtor in over four years. Debtor has been unsuccessfully seeking relief in bankruptcy for the past two and one-half years. The Plan offers MSB, a fully secured creditor, no immediate relief, a below market interest rate on its outstanding claim, and the additional risk that Debtor will be unable to make the balloon payment in ten years. MSB wisely demanded a security interest in many of Debtor's assets in exchange for extending him credit. Approving the Plan allowing Debtor to deprive MSB of its bargained for security interest in Debtor's assets would be contrary to the applicable rule of law and would cause further needless delay and undue hardship for MSB.

**WHEREFORE,** confirmation of Debtor's Amended Chapter 12 Plan is DENIED.

**FURTHER,** the claim valuation issue of MSB is moot.

**FURTHER,** this case is DISMISSED.