**In re Edmond Gary TORELLI, Debtor.**

**No. 4:04–BK–23884.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Feb. 28, 2006.

Michael J. Knollmeyer, Knollmeyer Law Office, Jacksonville, AR, for Debtor.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

Before the Court is an objection to confirmation of a Chapter 12 plan proposed by Edmond Torelli ("Debtor"). Regions Bank ("Regions"), a secured creditor in the case, filed the objection on July 7, 2005, and the Court conducted a confirmation hearing on September 9, 2005, after which the issue of whether to confirm the plan was taken under advisement. The Debtor and Regions have submitted post-trial briefs arguing their positions.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment in the case.

## ARGUMENTS

In its post-trial brief, Regions argues that the Debtor's plan is not confirmable because the proposed treatment of Regions' claim is unreasonable and does not provide for payment of the present value of the claim as required by 11 U.S.C. § 1225(a)(5)(B)(ii). Regions also argues that the plan is not feasible as required by 11 U.S.C. § 1225(a)(6) and that the Debtor does not qualify as a family farmer under the definition set out in 11 U.S.C. § 101(18).

The Debtor counters that Regions failed to introduce competent evidence that the plan treatment is unreasonable in terms of interest rate, repayment schedule, customary lender practices, or market standards. He further states that Regions did not present evidence refuting the Debtor's claim of Chapter 12 eligibility or the Debtor's proof that his plan is feasible.

## FACTS

The relevant facts involve the pre-bankruptcy indebtedness owed by the Debtor to Regions, the Debtor's proposed treatment of that indebtedness under his Chapter 12 plan, and other circumstances surrounding the Debtor's past, present and future status as a cattle rancher.

Prior to bankruptcy, Regions lent the Debtor $200,000.00 evidenced by a promissory note dated February 11, 1999. Interest accrued at the rate of 7.75 %, and the Debtor agreed to pay $1882.30 monthly on the indebtedness. The note matured February 17, 2004, with a balloon payment of $158,742.80 due at that time. To secure the note, the Debtor executed a mortgage in favor of Regions that granted a lien in approximately 40 acres of real property owned by the Debtor in Greenbrier, Arkansas.

The Debtor testified at the confirmation hearing that 30 acres of his property that is Regions collateral is pasture and that several improvements occupy the remaining acreage. The Debtor resides on the property. Prior to bankruptcy, he used the pasture to raise cattle to supplement his income from employment as a government subcontractor.

At a time not stated in the record, the Debtor lost his job with the government and became a full time rancher. In December 2003 and/or January 2004 when the Debtor had a herd of 250 head of cattle, one of his cows contracted bovine hemolytica. He testified that he subsequently lost 100 cows to the disease and sold off the rest, completely liquidating the herd in May or June of 2004. The Debtor halted the cattle operation and did not begin to repopulate the herd for six months to avoid further contamination of subsequently acquired cattle.

To earn income, the Debtor obtained employment at Pulaski Tech and Phillips County Community College teaching biology and mathematics in September 2004. At the confirmation hearing in September 2005, the Debtor stated that he continued to teach as his primary source of income.

As a result of losing his livestock to disease, the Debtor became delinquent on his monthly payments to Regions. The loan matured by its own terms on February 17, 2004. When he was unable to make the balloon payment that came due or renegotiate a loan with Regions, he approached four different lenders about refinancing the indebtedness. The Debtor stated that an interest rate of 5.15% was proposed by one or more of these lenders, but ultimately he was unable to obtain financing from any of the four. On November 18, 2004, the Debtor filed for relief under the provisions of Chapter 13 of the United States Bankruptcy Code. The case was converted to Chapter 12 by court order entered January 11, 2005.

At the confirmation hearing, the Debtor testified that he brought the first calf back onto his property in December of 2004 and, as of the hearing date in September 2005, he had a total of six cows on the property. He stated that he plans to repopulate the herd by purchasing nursing calves for $50.00 to $60.00 apiece. He predicted that within twelve to 18 months, he will begin selling cattle and showing a profit. The Debtor estimates that "if I go with all calves" the property will support a

maximum of 300 head of cattle. (Tr. at 21.)

For the time being, teaching is still the Debtor's principal source of income and occupies his workday from 8:30 a.m. to 4:30 p.m. with ranching chores performed before and after school hours. When his herd is bigger, the Debtor plans to reduce his teaching load and devote more time to ranching.

In his Chapter 12 plan of reorganization, the Debtor proposes to pay all his monthly disposable income of $1338.00 into the plan for thirty-six months. The plan treats Regions' claim as a long-term debt to be paid in full over a period of 20 years at the rate of 5% interest in monthly payments of $1067.00. The Debtor's property, the collateral for the debt, is valued at $230,000.00, and the present amount of the claim is stated at $165,000.00. Regions has filed a secured claim of $180,783.94 with the collateral valued at $300,000.00.

The Debtor's Statement of Financial Affairs listed gross income of $60,000.00 for 2003. His Chapter 12 Supplement to Statement of Financial Affairs states that in 2003, the last taxable year preceding the year in which the petition was filed, more than 50% of his gross income was realized from farming. At the hearing, the Debtor testified that his farming income for 2003 "was in the ballpark of 55% of the total money I made" (Tr. at 25) or approximately $33,000.00. The Debtor's Chapter 12 Supplement also states that of his total indebtedness of $223,282.51, the non-contingent, liquidated debts related to his farming operation total $217,026.01 or 97% of all debt.

Debbie Townsend, a loan officer with Regions, testified that the Debtor was in default as to the matured loan and that he had missed two payments at the time the loan matured. She stated that the terms she would typically offer a credit-worthy borrower for this type of loan would be a 9% interest rate and a ten-year amortization schedule with a balloon payment after five years. Townsend acknowledged that the Debtor has "plenty of equity" in the property and that Regions would agree to a new loan amortized over ten years to balloon in five years at the original interest rate, which was 7.75%. According to Townsend, the prime lending rate as of the date of the confirmation hearing was 6.5%.

## DISCUSSION

The issues to be resolved by the Court are whether the Debtor has correctly proposed to pay Regions the present value of its secured claim, whether the plan of reorganization is feasible, and whether the Debtor meets the eligibility requirements for Chapter 12 relief.

### PRESENT VALUE

■ The Bankruptcy Code provides that a Chapter 12 plan may "provide for payment of allowed secured claims consistent with section 1225(a)(5) of this title, over a period exceeding" the plan length, which is typically three years but never longer than five years. 11 U.S.C. § 1222(b)(9) & (c)(2000). This provision applies not only to long-term debts but to short-term debts that have matured prior to the commencement of the case. *In re Elk Creek Salers, Ltd.*, 286 B.R. 387, 390–91 (Bankr.W.D.Mo.2002) (quoting 8 Collier on Bankruptcy ¶ 1222.04, p. 1222–9–10); *In re Dunning*, 77 B.R. 789, 792 (Bankr. D.Mont.1987).

■ Thus, a Chapter 12 plan may restructure a loan obligation to provide for payment of a secured claim, such as that of Regions, beyond the length of the plan, provided the payment is consistent with section 1225(a)(5). Section 1225(a)(5)

states that the court shall confirm a plan if—

>> (5) with respect to each allowed secured claim provided for by the plan—

>>> (A) the holder of such claim has accepted the plan;

>>> (B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and

>>>> (ii) the value as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

>>> (C) the debtor surrenders the property securing such claim to such holder . . .

11 U.S.C. § 1225(a)(5) (2000).

■ In short, the statute provides that if a secured claim holder does not accept the plan under section 1225(a)(5)(A), the debtor must either provide for the creditor's retention of its lien and pay the present value of the claim pursuant to section 1225(a)(5)(B) or surrender the property in accordance with section 1225(a)(5)(C).

■ The Chapter 12 debtor bears the burden of proving that his proposed plan satisfies all of the requirements for confirmation as set out under section 1225(a), including subsections 1225(a)(5)(B) (present value of secured claims) and 1225(a)(6) (feasibility). *In re Krause,* 261 B.R. 218, 222 (8th Cir. BAP 2001)(citing *In re Sauer,* 223 B.R. 715, 726 (Bankr.D.N.D.1998); *In re Alvstad,* 223 B.R. 733, 737 n. 3 (Bankr. D.N.D.1998)); *In re Michels,* 301 B.R. 9, 13 (Bankr.N.D.Iowa 2003) (citing *In re Szudera,* 269 B.R. 837, 842 (Bankr.D.N.D. 2001)), *aff'd,* 305 B.R. 868 (8th Cir. BAP 2004); *In re Clark,* 288 B.R. 237, 245 (Bankr.D.Kan.2003) (citing *In re Ames,* 973 F.2d 849, 851 (10th Cir.1992)); *In re Harper,* 157 B.R. 858, 865

(Bankr.E.D.Ark.1993)(citing 5 Collier on Bankruptcy ¶¶ 1225.01, 1225.03[c] (15th ed.1991)).

In the present case, Regions does not accept the plan, and the Debtor does not propose to surrender the collateral. Therefore, the Debtor will only be permitted to treat Regions' claim as a long-term debt pursuant to section 1222(b)(9) if he provides in his plan that Regions will retain its lien and be paid the present value of its claim, which is fully secured. In his plan, the Debtor attempts to comply with this requirement for confirmation.

The Debtor's plan provides that Regions will retain its lien and proposes to pay the claim over a 20–year period at the interest rate of 5%. The issue is whether the proposed interest rate and repayment term will pay Regions the present value of its claim.

■ When a plan proposes to pay a secured claim in deferred installments, "a discount factor must be applied to the proposed stream of payments in order to determine the present value of those payments. . . . [Appropriate interest] must be paid . . . along with the principal because money received later in the future is worth less than money received immediately in the present." *In re Foertsch,* 167 B.R. 555, 563 (Bankr.D.N.D.1994)(citing 5 Collier on Bankruptcy ¶ 1225.03, at 1225–23 (15th ed.1993)). *See also In re Fenske,* 96 B.R. 244, 248 (Bankr.D.N.D.1988) (appropriate interest rate is called a "discount rate") (citing *In re Edwardson,* 74 B.R. 831 (Bankr.N.D.1987)).

The Bankruptcy Code offers no guidance on how to determine the appropriate interest rate that will pay the creditor the present value of its claim pursuant to section 1225(a)(5)(B)(ii). Courts have devised various methods to determine the appropriate interest rate.

Recently the United States Supreme Court considered the issue in the context of a Chapter 13 case and section 1325(a)(5)(B), a "cramdown" provision. In that case, the Supreme Court stated in dicta that the Bankruptcy Code has several provisions, including section 1225(a)(5)(B)(ii), that require a court to "'discoun[t] ... [a] stream of deferred payments back to the[ir] present dollar value,'" *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 1958, 158 L.Ed.2d 787 (2004) (plurality decision) (quoting *Rake v. Wade*, 508 U.S. 464, 472, n. 8, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993)). In considering these various Code sections gleaned from Chapters 11, 12, and 13, the Court stated, "We think it likely that Congress intended bankruptcy judges and trustees to follow essentially the same approach when choosing an appropriate interest rate under any of these provisions." *Id.* at 1958–59.

■ The method adopted by the Supreme Court in *Till* was the "formula" or "prime-plus" approach that begins with the national prime rate reported daily in the press. *Id.* at 1961. The Court observed that "[b]ecause bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly." *Id.* In adjusting the prime rate, courts should consider such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan. *Id. See also In re Doud*, 869 F.2d 1144, 1146 (8th Cir.1989) (stating that appropriate rate should consist of a risk-free rate plus additional in-

terest to compensate a creditor for risks posed by the plan) (citing *In re Monnier Bros.*, 755 F.2d 1336, 1339–40 (8th Cir. 1985)).[1]

■ In the instant case, the Debtor's proposal to pay a 5% interest rate does not comply with the formula approach adopted by the Court in *Till.* Although he had the burden of proof, the Debtor offered no evidence to support his conclusion that 5% is reasonable except to point out that he bargained for a similar rate with one or more of the lenders who ultimately declined to refinance the indebtedness. *See In re Harper*, 157 B.R. 858, 865 (stating debtor failed to establish a basis for his proposed interest rate). Regions presented testimony that was undisputed by the Debtor that the prime rate was 6.5%, well above the rate proposed by the plan.

Furthermore, the Court in *Till* stated that such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the plan must be considered in adjusting the prime rate. Here, the nature of the security is rural real property suitable for ranching. No evidence was adduced as to other uses for the property or its vulnerability to diminution in value. Both parties agree the Debtor has equity in the property. This circumstance weighs in favor of only a slight upward adjustment in interest rate in that it minimizes Regions' risk of loss in foreclosure.

However, as will be discussed below, the Debtor's plan does not pass the feasibility test, a factor that weighs in favor of adding at least 1.25% to the prime rate for an

---

1. In *Doud*, the Eighth Circuit affirmed a lower court ruling that the risk-free rate, the yield on a treasury bond, would be adjusted upward by 2% to account for the risk. In the instant case, neither party presented evidence of the yield on a treasury bond with a remaining maturity matched to the average amount outstanding during the term of the allowed claim. Regions referred to the treasury bond yield in its brief, but such a statement is not evidence.

interest rate of 7.75 %. Because the Debtor has not proposed an appropriate interest rate, the objection that the plan does not pay Regions the present value of its claim is sustained.

■ Furthermore, the Debtor's plan is not confirmable because the 20–year repayment period does not conform to section 1225(a)(5). While the Code does not specifically limit the repayment period, the present value and feasibility provisions imply such limits. *In re Dunning,* 77 B.R. 789, 793 (Bankr.D.Mont.1987)(quoting *In re Janssen Charolais Ranch, Inc.,* 73 B.R. 125 (Bankr.D.Mont.1987)).

■ When considering length of loan term, the court can base a ruling on such facts as the preexisting contract length and the customary length of repayment for similar loans. *In re Koch,* 131 B.R. 128, 132–33 (Bankr.N.D.Iowa 1991); *In re Lupfer Bros.,* 120 B.R. 1002, 1005 (Bankr. W.D.Mo.1990) (citing *In re Peterson,* 95 B.R. 663 (Bankr.W.D.Mo.1988)); *In re Foster,* 79 B.R. 906, 911 (Bankr.D.Mont. 1987).

■ In the instant case, the original agreement included a ten-year amortization of the debt to be paid over a five-year period with a balloon payment at the end of five years. Regions would obviously not be getting the benefit of its bargain by being forced into a new loan of substantially longer term than originally contemplated by the parties. Further, Regions' representative testified that the five-year balloon note is a standard repayment term for agricultural loans offered to creditworthy borrowers, albeit at a much higher rate of 9%.

The Debtor did not offer testimony or documentary evidence to substantiate his claim that the 20–year repayment period was customary in the market. The facts of this case support a finding that a five-year balloon note paid with monthly payments figured under a ten-year amortization is a reasonable repayment term. Were the Debtor allowed a 20–year repayment option, the Court would require the Debtor to pay a market rate of interest substantially higher than 7.75% to conform to the requirements of section 1225(a)(5)(B)(ii).

## FEASIBILITY

■ One of the requirements for confirmation of a Chapter 12 plan is that "the debtor will be able to make all payments under the plan and to comply with the plan...." 11 U.S.C. § 1225(a)(6) (2000). This requirement, dubbed the "feasibility test," focuses on the probability of the debtor's making all payments under the plan. *In re Mosbrucker,* 227 B.R. 434, 437 (8th Cir. BAP 1999)(citing *First Nat'l Bank v. Hopwood,* 124 B.R. 82, 86–87 (E.D.Mo.1991) (quoting *In re Clarkson,* 767 F.2d 417, 420 (8th Cir.1985))), *aff'd,* 198 F.3d 250 (8th Cir.1999); *In re Konzak,* 78 B.R. 990 (Bankr.D.N.D.1987)(quoting *In re Ahlers,* 794 F.2d 388, 392 (8th Cir. 1986)).

■ To determine whether a plan is feasible, the court should analyze the debtor's projected income and expenses in relation to actual past performance. *Euerle Farms, Inc. v. State Bank in Eden Valley (In re Euerle Farms, Inc.),* 861 F.2d 1089, 1092 (8th Cir.1988); 8 Collier on Bankruptcy ¶ 1225.02[5] (Alan N. Resnick & Henry J. Sommer *et al.* eds., 15th ed. rev.1993). Moreover, the feasibility requirement must be considered whenever a plan proposes to pay the present value of a secured claim because there must be a likelihood that the debtor has sufficient disposable income to pay the claim as required by the Code. *In re Fenske,* 96 B.R. 244, 248 (Bankr.D.N.D.1988).

In the instant case, the evidence at trial was that the Debtor does not have the income to increase plan payments so that Regions will receive the present value of its claim in a future stream of payments. The Debtor's schedules, statement of financial affairs and supplement, and Chapter 12 plan of reorganization demonstrate that the Debtor proposes to contribute all of his disposable income into the plan and that he is unable to pay more. The farming operation does not generate cash flow and, indeed, the Debtor estimates the farm currently generates a net operating loss. (*See* Chapter 12 Supplement to Statement of Financial Affairs).

Also of concern is how the Debtor will fund his proposal to repopulate his herd, even if he can buy calves at the unsubstantiated sum of $50.00 to $60.00 a head. *See, e.g., In re Big Hook Land & Cattle Co.,* 77 B.R. 793 (Bankr.D.Mont.1987)(debtor's plan inadequately identified the source of funds necessary to increase the debtor's cattle herd). Even if he manages to add to the herd, his projected expenses do not account for the resulting higher costs in feed and other supplies associated with raising an increasing number of cattle until he is able to begin selling the cattle again. Furthermore, the Court is highly skeptical that the Debtor can operate a successful cattle operation consisting of 300 head of cattle on only 30 acres of pasture, although the Bank offered no evidence to the contrary.

As to actual past performance, the evidence was that when the Debtor's herd was at its peak in 2003, the Debtor grossed approximately $33,000.00 in farming income, but no evidence was adduced as to farming expenses during the same period. The Debtor failed to carry his burden of proof to show actual past performance so that the Court would have an objective basis for predicting the Debtor's future ability to fund a plan in compliance with the Code.

For all these reasons, the Court concludes that the plan is not feasible.

### ELIGIBILITY

Finally, Regions argues that the Debtor's plan should not be confirmed because the Debtor is ineligible for Chapter 12 relief. Specifically, Regions asserts that the Debtor has not offered documentation supporting the amounts of farm-related debt and income asserted on his Supplement to Statement of Financial Affairs.

The Bankruptcy Code provides that 80% of a family farmer's noncontingent, liquidated debt must arise out of a farming operation owned or operated by the debtor. Further, the Code requires that a family farmer receive more than 50% of his gross income from a farming operation during the taxable year preceding the taxable year in which the case was filed. 11 U.S.C. § 101(18)(A) (2000).

As stated, the Debtor's Chapter 12 Supplement shows farm-related debt of $217,026.01 which is 97% of a total debt of $223,282.51. The Debtor's schedules support this assertion. He also asserts that more than 50% of his gross income was realized from farming for the year 2003.

The Debtor's schedules are some evidence of his eligibility for Chapter 12 relief. *Accord In re Labig,* 74 B.R. 507, 509 (Bankr.S.D.Ohio 1987)(Chapter 12 debtors' schedules created a rebuttable presumption regarding amount of debt owed by debtors for eligibility purposes)(citing *In re Pearson,* 773 F.2d 751, 757 (6th Cir.1985)). Regions offered no evidence to rebut the presumption created by the Debtor's schedules and statement of financial affairs that he qualifies as a family farmer. Accordingly, the Court declines to deny confirmation to the plan on

the basis that the Debtor is ineligible for Chapter 12 relief.

## CONCLUSION

The Court denies confirmation of the Debtor's Chapter 12 plan because it does not propose to pay Regions the present value of its fully secured claim and because the plan is not feasible. The Debtor has 20 days to file a modified plan that is in compliance with this order or the case will be dismissed.

IT IS SO ORDERED.