**In re Billy G. HEATH and Flora M. Heath, Debtors.**

**No. 3:11–bk–16038.**

United States Bankruptcy Court, E.D. Arkansas, Jonesboro Division.

July 3, 2012.

---

Jeannette A. Robertson, Jonesboro, AR, for Debtors.

Renee Williams, Chapter 12 Trustee.

### ORDER SUSTAINING OBJECTION TO CONFIRMATION

AUDREY R. EVANS, Bankruptcy Judge.

Now before the Court is the *Objection to Confirmation of Plan* ("**Objection to Confirmation**") filed by Deere & Company ("**Deere**") on January 4, 2012. At the hearing on the Objection to Confirmation, held March 1, 2012, the Debtors and Deere reached an agreement resolving all issues raised in the Objection to Confirmation except whether the Debtors could sever the cross-collateralization of Deere's loans through the Chapter 12 Plan (the "**Plan**"). On April 2, 2012, the parties submitted an *Agreed Order Withdrawing on Conditions* ("**Agreed Order**"), under which Deere agreed to withdraw its Objection to Confirmation except with regard to the issue of cross-collateralization. On April 6, 2012, in an *Agreed Order Setting Briefing Schedule* ("**Briefing Schedule**"), the parties established deadlines for filing briefs, and set out the issue to be resolved by the Court, as follows:

> Does the [D]ebtors' filing of a Chapter 12 Petition obviate the cross-collateralization language in the finance agreements between Deere & Company and debtor Billy G. Heath?

(Briefing Schedule, p. 1). On April 27, 2012, after receiving the parties briefs, the Court took this matter under advisement. Having reviewed the parties' arguments and the law, the Court finds that bank-

**710**

ruptcy law does not allow the Debtors to sever the cross-collateralization of Deere's claims, and accordingly, sustains Deere's Objection to Confirmation on that issue.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The following shall constitute findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052 and 9014.

## FACTS

The facts of this case are straightforward and undisputed. The Debtors filed for relief under Chapter 12 of the Bankruptcy Code on September 19, 2011. At the time of filing, the Debtors owed Deere under three separate loan agreements. Each of the loan agreements provided Deere a purchase money security interest in a piece of specifically identified farm equipment, and each loan agreement also contained a cross-collateralization clause.

Deere filed three separate claims in the Debtors' bankruptcy case; one for each loan. The first claim (associated with a loan for a John Deere 5525 Utility Tractor) is in the amount of $23,891.02 ("**Claim 11**"). The second claim (associated with a loan for a 28' Shelbourne Reynolds Rice Stripper Header) is in the amount of $9,316 ("**Claim 12**"). The third claim (associated with a loan for a John Deere 9870 STS Combine and a John Deere 635 Platform Header) is in the amount of $287,270.65 ("**Claim 13**").[1]

The Debtors' Plan, filed December 19, 2011, contained a provision seeking to sever the cross-collateralization of the claims. Specifically, the Plan states: "Each debt obligation created in this Plan shall be secured only by the lien stated in the Plan. Unless otherwise stated, no debt obligation shall be cross-collateralized." (Plan at 9, VI.I). Deere objected to Debtors' proposed treatment of its claims under the Plan, which resulted in a hearing, post-trial briefs, and ultimately, this Order.

## DISCUSSION

Based on the cross-collateralization clauses in the loan agreements, Deere asserts that each of the three claims is secured by both the farm equipment directly associated with the loan agreement for that claim, as well as the farm equipment associated with the other two loan agreements. Deere contends that it has the right to retain a lien on all of the collateral under the requirements for confirmation, more particularly, 11 U.S.C. § 1225(a)(5)(B)(i). The Debtors do not argue that the cross-collateralization clauses are invalid or unenforceable under state law, but instead assert that federal bankruptcy law—more particularly, 11 U.S.C. § 1222(b)(2)—authorizes them to sever the claims by nullifying the effect of the cross-collateralization through the Plan.

There are two questions that must be resolved for the Court to determine this matter. First, does the lien-retention requirement found in § 1225(a)(5)(B)(i) in-

---

1. In the Agreed Order, the parties agreed to the value of the farm equipment associated with each claim. The John Deere 5525 Utility Tractor associated with Claim 11 is valued at $17,500; the 28' Shelbourne Reynolds Rice Stripper Header associated with Claim 12 is valued at $9,316; and the John Deere 9870 STS Combine and a John Deere 635 Platform Header associated with Claim 13 are valued at $198,000. Accordingly, there is no dispute between the parties as to the value of the secured collateral available to Deere under an 11 U.S.C. § 506 valuation. The only dispute between the parties, and the question now before the Court, is the purely legal issue of whether bankruptcy law allows the Debtors to sever the cross-collateralization of the claims, making each secured only by the farm equipment purchased with the funds from that separate loan.

clude property brought into security through cross-collateralization? Second, if the § 1225(a)(5)(B)(i) lien-retention requirement encompasses cross-collateralized property, may the Debtor modify the lien through its plan by proposing to nullify the cross-collateralization? As further explained below, the Court finds that the § 1225(a)(5)(B)(i) lien-retention requirement applies to cross-collateralized property, and the Debtors cannot modify that lien through their Plan.

### The Lien–Retention Requirement

 With regard to the first question, the Court finds that § 1225(a)(5)(B)(i)'s lien-retention requirement encompasses cross collateralized property. Under 11 U.S.C. § 1225(a)(5), a plan may be confirmed with regard to a secured creditor only if one of three requirements is met:

(A) the holder of such claim has accepted the plan;

(B)(i) *the plan provides that the holder of such claim retain the lien securing such claim;* and (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1225(a)(5) (emphasis added). "Unless the debtor surrenders the collateral to the secured creditor or the creditor elects to accept less, a plan must provide that a secured creditor retain its lien." *In re Butler*, 97 B.R. 508, 512–13 (Bankr. E.D.Ark.1988).

 The word "lien" is a defined term in the Bankruptcy Code, and is given the broad definition of an "interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37); *In re Robinson*, 2003 WL 22996982, at *3 n. 8 (Bankr.E.D.Pa.2003). To define the limits of a creditor's interest in property courts look to non-bankruptcy law. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *In re Stevens*, 307 B.R. 124, 128 (Bankr.E.D.Ark.2004). Under Arkansas law, cross-collateralization is a valid, enforceable method of securing a debt. *See* Ark.Code Ann. § 4–9–204.[2] *See also In re Washington*, 2003 WL 22119519, at *2 (Bankr.E.D.Ark.2003) ("In Arkansas, either antecedent debt or subsequent debt may be secured by a cross-collateralization clause.") (citing *National Bank of Eastern Arkansas v. General Mills, Inc.*, 283 F.2d 574, 576 (8th Cir.1960)). Based on the Court's review of the language of the Bankruptcy Code and the case law, it unequivocal that the lien a secured creditor retains pursuant to § 1225(a)(5)(B)(i) includes a lien on property obtained through cross-collateralization.

### Modification of the Lien

 Having established that a lien obtained though cross-collateralization is

---

**2.** Ark.Code Ann. § 4–9–204 governs after-acquired property and future advances in secured transactions. That provision provides (subject to certain exceptions not applicable here) that:

> a security agreement may create or provide for a security interest in after-acquired collateral[, and] may provide that the collateral secures … future advances or other value, whether or not the advances or value are given pursuant to commitment.

Ark.Code Ann. § 4–9–204(a), (c). As explained in the Official Comments to Revised U.C.C. § 9–204, which is identical to the Arkansas statute, the combined effect of § 9–204(a) and (c) makes the use of cross-collateralization clauses valid. Revised U.C.C. § 9–204 Official Comment 2. "Indeed, the parties are free to agree that a security interest secures any obligation whatsoever." Revised U.C.C. § 9–204 Official Comment 5.

retained under § 1225(a)(5)(B)(i), the Court addresses whether the lien can be modified through a bankruptcy plan to nullify the effect of cross-collateralization. The lien-retention requirement of § 1225(a)(5)(B)(i) is construed strictly. *See In re Butler*, 97 B.R. at 511; *In re Citrowske*, 72 B.R. 613, 616 (Bankr. D.Minn.1987). *See also In re Hanna*, 912 F.2d 945, 949 (8th Cir.1990) ("Chapter 13's lien retention provision, 11 U.S.C. § 1325(a)(5)(B)(i), which is identical to its counterpart in Chapter 12, has also been strictly construed."). Indeed, the overwhelming majority of courts have refused to modify or alter the lien retained pursuant to § 1225(a)(5)(B)(i) in any way. *See, e.g., In re Clark*, 288 B.R. 237, 249–51 (Bankr.D.Kan.2003) (finding that where Bank previously had a lien on both real estate and personalty, and plan proposed for Bank to retain lien only on real estate, the "treatment of the Bank's claim runs afoul of the lien retention requirement in § 1225(a)(5)(B)."); *In re Butler*, 97 B.R. at 511 (finding plan provision authorizing debtor to trade in farm equipment collateral by providing secured creditor with a second lien on the newly obtained collateral violated § 1225(a)(5)(B)(i)'s lien-retention requirement.); *In re Michels*, 301 B.R. 9, 14–16 (Bankr.N.D.Iowa 2003) (denying confirmation of plan that required secured creditor to release its lien on machinery because it was "significantly oversecured" by lien on other property, and holding that "Plan does not allow MSB to retain its lien on these pieces of collateral as security ... as required by § 1225(a)(5)(B)(i).").[3]

The statutory language of § 1225(a)(5)(B)(i) also requires a strict enforcement of the lien-retention requirement. Section 1225(a)(5)(B)(i) refers to retention of "the" lien, not retention of "a" lien. 11 U.S.C. § 1225(a)(5)(B)(i); *In re Hanna*, 912 F.2d at 950. Also, the retention of a full, unaltered lien under § 1225(a)(5)(B)(i) dovetails with the requirement in the following subsection— § 1225(a)(5)(B)(ii)—that a secured creditor receive the full amount of its secured claim. *In re Harmon*, 101 F.3d 574, 583–84 (8th Cir.1996) (finding that the "allowed amount of such claim" referred to in § 1225(a)(5)(B)(ii) is the allowed amount of the creditor's secured claim as bifurcated into secured and unsecured claims under 11 U.S.C. § 506(a)). If the amount a secured creditor must receive under the plan is the full value of its secured collateral, then the lien retained by the secured creditor should extend to all of its collateral.

The Debtors argue that they can modify the secured claim under the plan, pursuant to 11 U.S.C. § 1222(b)(2), to remove the cross-collateralization from the lien. The Court finds the Debtors' argument unpersuasive. Without question, § 1222(b)(2) authorizes the Debtor to "modify the rights of holders of secured claims" through the plan. 11 U.S.C. § 1222(b)(2). However, that authorization is limited to modifications that comply with the confirmation requirements of § 1225. *In re Kerwin–White*, 109 B.R. 626, 629–30 (D.Vt. 1990) ("Section 1222(b) is a general provision of Chapter 12 which merely states what plans *may* contain; it does not purport to override the specific limitations

---

**3.** The only exception the Court found to the general rule that a lien may not be altered under the plan was in *In re Hanna*, 912 F.2d 945 (8th Cir.1990), where the court allowed a plan provision to alter a lien on livestock to make it a lien on the "herd," as opposed to the individual animals. However, that exception has received a narrow interpretation, limited to circumstances involving liens on livestock. *In re Michels*, 301 B.R. at 15 ("Since the collateral at issue in this case is farm machinery and not livestock, *Hanna* is not applicable.").

placed on it in § 1225(a)(5).”). That is, section 1222(b)(2) sets the boundaries of how a debtor *may* treat a secured claim in a Chapter 12 plan; section 1225(a)(5) sets out requirements for how a debtor *must* treat a secured claim in a Chapter 12 plan. The authority to modify a secured claim under § 1222(b)(2) does not supercede the lien-retention requirement of § 1225(a)(5)(B)(i).

Neither the case authority interpreting § 1225(a)(5)(B)(i)'s lien-retention requirement, nor the statutory language itself, provide authority to allow modification of the lien. It is also clear that § 1222(b)(2) does not authorize such modification because doing so would be contrary to the confirmation requirements of § 1225(a)(5)(B)(i).[4] As a result, the Court finds that the Debtors cannot modify Deere's claims through their plan to nullify the effects of cross-collateralization.

### CONCLUSION

Each of the Debtors' three loans with Deere included a cross-collateralization clause, and there was no argument made that the clause was invalid or unenforceable under state law. Consequently, the Court finds that § 1225(a)(5)(B)(i) requires Deere be allowed to retain a lien on the cross-collateralized property for each of its secured claims. The lien on the cross-collateralized property is the security for which the parties bargained when they agreed to the loans, and there is no authority for the Debtors to modify that security interest through their Plan. Therefore, in order for the Debtors' Plan to be confirmed, the Debtors must provide Deere with treatment of its secured claims

in recognition of its liens on the cross-collateralized property.

Accordingly, it is hereby

**ORDERED** that Deere's Objection to Confirmation is **SUSTAINED.**

**IT IS SO ORDERED.**

---

**4.** The Court notes that other provisions of the Bankruptcy Code may authorize the use of property despite a creditor's lien on that property (for example, 11 U.S.C. § 363 allows use of estate property provided adequate protection is afforded to the secured creditor), but those provisions require actions separate and beyond implementation through the plan.